Hooksett District Court
No. 78-239

*In re* BRENDA H.

May 23, 1979

*Bjorn R. Lange*, New Hampshire Legal Assistance, for the parents of Brenda H.

*Thomas D. Rath*, attorney general (*David W. Marshall*, assistant attorney general, orally), for the State.

DOUGLAS, J.  This case requires us to resolve questions concerning the confidentiality of physician-patient and psychologist-patient communications in child-neglect proceedings under RSA ch. 169, *as amended* (Cum. Supp. 1978), and the State's burden of proof in these proceedings.

Custody of Brenda H. was awarded temporarily to the division of welfare under RSA ch. 169 on July 6, 1977. In December 1977, Brenda's parents were granted occasional visitation rights. Between July 1977 and April 1978, the parents received counselling services from Central New Hampshire Community Mental Health Services, Inc. On June 5, 1978, the parents filed a motion to regain custody of Brenda. At the July 1978 custody hearing the parents excepted to the admission of testimony of Dr. A, a physician working at the mental-health clinic, and Ms. B, a mental-health therapist also employed at the clinic. The Hooksett District Court (*Kfoury*, J.) issued its opinion on July 24, 1978, continuing custody of Brenda with the division of welfare. The parents contend that their communications with Dr. A and Ms. B were privileged and that the court applied an incorrect standard of proof in determining that Brenda should not be returned to her parents.

I. *The Physician-Patient and Psychologist-Patient Privileges*

The district court admitted the testimony of the physician and thera-

pist under RSA 169:43, which provides that "[n]o common law or statutory privilege except the attorney-client privilege shall be grounds for excluding evidence regarding the abuse or neglect of a child in any civil proceeding resulting from a report pursuant to this subdivision." The parents contend that, despite this statute, their communications with Dr. A and Ms. B are privileged under RSA 329:26 (Supp. 1977) and RSA 330-A:19.

RSA 329:26 (Supp. 1977) provides that the confidential communications between a physician and patient are privileged "except as otherwise provided by law." RSA 330-A:19 provides that communications between a certified psychologist and his client are also privileged. These statutory privileges should be strictly construed. *Marceau v. Orange Realty, Inc.*, 97 N.H. 497, 92 A.2d 656 (1952). We note that the testimony of Ms. B, the therapist at the mental health center, is not privileged under RSA 329:26 (Supp. 1977) or RSA 330-A:19, because she is neither a licensed physician nor a certified psychologist.

The parents first argue that RSA 169:43 applies only to proceedings immediately following a report of abuse or neglect, and not to subsequent judicial proceedings in which the parents seek to regain custody. This limited construction of the statute is incompatible with its express language and the stated legislative purpose of protecting the child's welfare. The statute is applicable "in *any* civil proceeding resulting from a report" of child abuse or neglect. RSA 169:43 (emphasis added). If parents assert the privilege and physicians' or psychologists' testimony is excluded from later proceedings, the district court will be unable to determine whether the child should be returned to the parents, and the State will be unable to bear its burden of proof. We decline to adopt the narrow construction of the statute suggested by the parents. *See* Chamberlain & Eaton, *Protecting the Abused and Neglected Child*, 19 N.H.B.J. 25, 44 (1977).

The parents also contend that the district court's admission of evidence under RSA 169:43 contravenes the legislative purpose of RSA ch. 169, which includes "preserving the unity of the family and separating the child from his parents only when it is clearly necessary for his welfare or the interests of public safety." RSA 169:1 III (Supp. 1977). The purpose of the reporting sections of the statute, RSA 169:37-:45, is "to provide for the protection and welfare of abused and neglected children . . . to prevent further abuse or neglect . . . and to strengthen the family life whenever possible." RSA 169:37. Admission of relevant medical and psychiatric evidence permits the district court to make a decision that both protects the child and where possible strengthens the family.

This court has previously considered the conflict between the provisions of these statutory privileges and the requirement of a commitment renewal hearing for the criminally insane under RSA 651:11-a on the issue of dangerousness. *State v. Kupchun*, 117 N.H. 412, 373 A.2d 1325 (1977). Although RSA 651:11-a is silent on the question of admissibility of psychiatric evidence, we held that "the privileges in question are not absolute and must yield when disclosure of the information concerned is considered essential." *Id*. at 415, 373 A.2d at 1327. We stated that the court must be "presented with the best information available which has a bearing on defendant's dangerous or mental condition" to determine the issue of dangerousness. *Id*.

■ In this case, the legislature has considered the admissibility of usually privileged evidence, and has expressly stated that the statutory privileges do not apply. Further, the rationale behind the admission of such evidence in *Kupchun* is equally applicable here. The district courts have the continuing duty to supervise a neglect case once a child has been found to be neglected. The court must "review the disposition of each child under RSA 169:7 . . . at least once within one year after such disposition and at least annually thereafter." RSA 169:31-a. An integral part of this duty is to determine whether or when the child should be returned to his parents. The best information available to the court concerning past and future parental behavior is often the testimony of treating physicians, psychologists, and social and mental-health workers.

■ Although the statutory privileges are abrogated by RSA 169:43, the significant policies underlying these privileges, which also apply to unprivileged communications between patients and therapists and professional support staff, are particularly applicable in child-abuse and neglect cases. The preservation of confidentiality of communications between therapist and patient may be a crucial factor in the successful treatment of psychiatric problems. "Many physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust, but a psychiatrist must have his patient's confidence or he cannot help him." *Taylor v. United States*, 222 F.2d 398, 401 (D.C. Cir. 1955); *see* Louisell, *The Psychologist in Today's Legal World: Part II*, 41 MINN. L. REV. 731, 745 (1957). The treatment of parents who abuse or neglect their children may require prolonged interaction with psychiatrists, psychologists, mental-health workers, and social workers.

■ Because successful therapeutic treatment of parents is crucial to the preservation of family unity, which is a goal of RSA ch. 169, the

district courts must carefully exercise their discretion in admitting these communications, and must cautiously balance the probative value of the evidence against the possible damage to the therapeutic relationship in each case. In the present case, the court in its own words *"sua sponte,* issued a cautionary instruction to [Dr. A. and Ms. B] on the specifics of their counselling and treatment of these patients with communications [sic] and requested that they provide the court more with recommendations and options than a specification of their conferences with their patients." The district court's commendable conduct in issuing this cautionary instruction is an example of the careful exercise of discretion we have described. Allowing the district court this discretion furthers the purpose of protecting the welfare of the child and recognizes that "[t]he real purpose of any privilege is not to exclude relevant evidence, but simply to facilitate activities which require confidence." McNamara, *The Hierarchy of Evidentiary Privilege in New Hampshire,* 20 N.H.B.J. 1, 27 (1978).

We note that the parents' interest in the privacy of these communications is not greatly jeopardized by limited disclosure of medical or psychiatric evidence at neglect proceedings. RSA 169:20 provides that "[n]o one shall attend such hearing, unless his presence is necessary either as parent, party or witness, or, in the opinion of the court, in the interest of justice." The records of such proceedings "shall be withheld from indiscriminate public inspection." RSA 169:22.

## II.  *The State's Standard of Proof*

The district court granted the parents' requested ruling of law that Brenda "should continue to be kept from the physical custody of her natural parents only if the Division of Welfare meets its burden of showing that its retention of custody and control will plainly better the child." His ruling incorporated the language of RSA 169:1 III (Supp. 1977), which establishes the purposes and policies of RSA ch. 169, including "preserving the unity of the family and separating the child from his parents only when it is clearly necessary for his welfare." The district court judge declined to rule that it would be dangerous for Brenda to return to her parents. Instead, he ruled that it would be untimely, inappropriate, or premature to return her to them. He also ruled that it would be in the child's best interest to remain in foster care. The parents contend that the court improperly permitted the division of welfare to retain custody because of the court's use of the "best interest of the child" standard.

In considering permanent termination of parental rights under RSA ch. 170-C, this court stated that "to hold merely that inadequate

parenting, absent specific harm to the [child], is sufficient to terminate parental rights in the 'best interest of the child' is too vague a concept and places undue emphasis on the parental conduct rather than any harm to the child." *State v. Robert H.*, 118 N.H. 713, 718, 393 A.2d 1387, 1390 (1978).

This court's emphasis on harm to the child is similar to language in RSA 169:2 V(b), which specifically defines a neglected child as one "[w]ho is without proper parental care . . . necessary for his physical, mental, or emotional health, when it is established that his health has suffered or is likely to suffer serious impairment." This definition "allow[s] a court the flexibility it needs in order to consider each child and each parent/child relationship on a case-by-case basis." Chamberlain & Eaton, *supra* at 29. The district court should make an express finding of harm or impairment to the child in an abuse or neglect case. Although the district court judge did not make an express finding, it can be implied from his ruling that returning Brenda to her parents would be harmful or cause impairment to her health. His ruling was based in part on the testimony of the treating physician and therapist and on his conclusion, drawn from the testimony, that the parents did not understand or properly attach importance to mental health counselling or parent effectiveness training. He also considered the fact that Brenda's parents had admitted to neglect of their child when he first awarded custody to the division. The court's finding that leaving custody with the division was in the child's best interest, although not the applicable test, does not negate its other factual findings. These findings are sufficient to support the court's ruling that custody of the child should remain with the division of welfare.

The parents further argue that in abuse and neglect proceedings the State must prove its case beyond a reasonable doubt before temporary custody can be continued with the division. In *State v. Robert H.*, 118 N.H. 713, 393 A.2d 1387 (1978), we held, in cases involving permanent and final *termination* of parental rights under RSA ch. 170-C that the New Hampshire Constitution requires proof beyond a reasonable doubt of specific harm to the child. RSA ch. 169 does not specify the standard of proof to be employed by the court in making orders in neglect or abuse cases. Fourteen States use a "preponderance of the evidence" standard; seven States require proof by "clear and convincing" evidence; and two States require proof "beyond a reasonable doubt." 6 NATIONAL TASK FORCE TO DEVELOP STANDARDS AND GOALS FOR JUVENILE JUSTICE AND DELINQUENCY PREVENTION, ABUSE AND NEGLECT 138 (1977) (hereinafter ABUSE AND NEGLECT).

The preponderance standard "bend[s] somewhat in favor of intervention in order to protect the child from injury in doubtful cases," and thus may not adequately protect family integrity. *Id.* at 140. On the other hand, "the proof beyond a reasonable doubt" standard established in *Robert H.* is inappropriate in abuse and neglect cases because in the latter instances the parents are only temporarily deprived of custody. Termination of parental rights under RSA ch. 170-C is *final.* The "clear and convincing" evidentiary standard is recommended by the Juvenile Justice Standards Project. IJA–ABA STANDARDS RELATING TO ABUSE AND NEGLECT 140–41 (Tentative Draft 1977). This "middle-of-the-road" approach is most satisfactory "in light of the substantial parental rights being challenged and the possible harms to the child from intervening." ABUSE AND NEGLECT, *supra* at 141. *See Addington v. Texas*, 441 U.S. 418 (1979) (discussion of "clear and convincing evidence" standard).

██ ██ Given the danger of unwarranted or harmful intrusion into family life, *State v. Robert H.*, 118 N.H. 713, 393 A.2d 1387 (1978), we hold that the State must initially prove child abuse or neglect by clear and convincing evidence and the same standard applies to continue the child's custody in the division of welfare. We do not have a transcript of the district court hearing before us; nevertheless, the district court's opinion indicates that there was such evidence supporting the court's ruling that custody of the child should remain with the division of welfare. *See McCrady v. Mahon*, 119 N.H. 247, 400 A.2d 1173 (1979).

*Exceptions overruled.*

All concurred.