Rockingham
No. 81-068

### THE STATE OF NEW HAMPSHIRE

v.

### MAURICE A. LAROCHE

March 10, 1982

*Gregory H. Smith,* attorney general (*Michael A. Pignatelli,* attorney, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, on the brief and orally, for the defendant.

BATCHELDER, J. This appeal comes before us following the defendant's conviction by a jury of first-degree assault. RSA 631:1 (Supp. 1979). The defendant argues that the Superior Court (*Temple,* J.) improperly admitted certain testimony that the defendant claimed was protected by the physician-patient privilege, RSA 329:26 (Supp. 1979), and also that his jury was unconstitutionally selected. We affirm the conviction.

Prior to the time of the assault, the defendant and his wife, Joan LaRoche, had had marital problems, and they separated in November, 1979. Mrs. LaRoche was in the process of obtaining a divorce, which the defendant adamantly opposed. She and their son, Dennis, both testified that the defendant had threatened to kill Mrs. LaRoche if she went through with the divorce. Dennis LaRoche also testified that the defendant had once shown him a gun when discussing the pending divorce.

On June 7, 1980, the defendant visited Mrs. LaRoche in an apparent attempt to dissuade her from pursuing the divorce. Their son, Dennis, the only other person in the house at that time, left the house, but, shortly thereafter, heard what he thought to be a firecracker, and ran back into the house. Dennis found his mother slouched in a chair and the defendant lying on the floor next to the gun he had earlier shown Dennis. Both Mrs. LaRoche and the defendant had been shot in the head. Mrs. LaRoche lost her left eye, her sense of smell and taste, and also suffered nerve and bone damage and paralysis. The defendant recovered and was indicted.

The defendant's theory of the case, that he and his wife had been shot by an intruder, was damaged by admissions he had made to two emergency medical technicians (EMT's), Thomas Laycock and Roger Gale, who transported him to the hospital. Both EMT's testified that, while in the ambulance, the defendant stated: "I had the gun here. The bullet went in here, and the bullet came out here."

Later, while in the emergency room, but not working under the supervision of a physician, one of the EMT's heard the defendant tell the physician that he had shot his wife and then had shot himself in the head.

The defendant argues that these two statements should have been suppressed because they fall within the physician-patient privilege. *See* RSA 329:26 (Supp. 1979).

■ At the outset, the State argues that the defendant's statements were not "customary and necessary for diagnosis and treatment." *See id.* We disagree. Statements about how an injury occurred (in this case, statements relating to the location and nature of the wound) would certainly be normal and needed information that one would expect to be given to a treating physician. The privilege, if applicable, would cover the defendant's admissions.

■ The defendant argues that the physician-patient privilege should cover his admissions in the ambulance to the EMT's. The statute, however, by its terms, applies only to physicians and surgeons and those working under their supervision. *See State v. Thresher,* 122 N.H. 63, 72, 442 A.2d 578, 582 (1982). *See generally State v. Merski,* 121 N.H. 901, 911, 437 A.2d 710, 715 (1981). Statutory privileges must be strictly construed. *In re Brenda H.,* 119 N.H. 382, 385, 402 A.2d 169, 171 (1979). Since EMT's are not physicians or surgeons, and there was no evidence that the EMT's were working under the supervision of a physician or surgeon, the privilege cannot protect the defendant's admission in the ambulance. *See id.,* 402 A.2d at 171 (construing the then-applicable section of psychologist-client privilege, Laws 1957, 121:1).

■■ The defendant next argues that EMT Laycock should not be allowed to testify to the defendant's admissions to the doctor in the emergency room that Laycock overheard. The defendant concedes that Laycock was not working under the supervision of the attending physician, but was lingering in the emergency room out of curiosity. Ordinarily, the presence of an extraneous third party to a privileged conversation destroys the privilege. *See Scott v. Grinnell,* 102 N.H. 490, 495, 161 A.2d 179, 184 (1960); *People v. Decina,* 2 N.Y.2d 133, 145, 138 N.E.2d 799, 807, 157 N.Y.S.2d 558, 569 (1956). Here, the defendant has failed to put into the record any facts that would prevent the application of this rule. He did not show that the presence of the third party was required by the police, *see, e.g., People v. Decina,* 2 N.Y.2d at 143–45, 138 N.E.2d at 806–07, 157 N.Y.S.2d at 568–70; neither has he shown that the

information was wrongfully disseminated by the doctor, *see Branch v. Wilkinson*, 198 Neb. 649, 655–62, 256 N.W.2d 307, 312–15 (1977), nor has he shown that either the physician or Laycock misrepresented Laycock's role in the emergency room. The defendant's admissions were, therefore, properly admitted.

Finally, the defendant challenges the constitutionality of the selection of his jury. This issue is controlled by *State v. Reardon*, 121 N.H. 604, 605, 431 A.2d 796, 797 (1981), and our holding that the defendant's jury was constitutionally selected is controlled by that case.

*Affirmed.*

All concurred.