Rockingham
No. 88-206

THE STATE OF NEW HAMPSHIRE

v.

DAVID A. MELVIN

October 9, 1989

*Jeffrey R. Howard,* acting attorney general (*Janet C. Gorman,* attorney, on the brief, and *Peter G. Beeson,* senior assistant attorney general, orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

## Memorandum Opinion

Thayer, J. The defendant was convicted following a jury trial on two counts of aggravated felonious sexual assault of his fifteen-year-old daughter. The defendant argues on appeal that the Trial Court (*Gray*, J.) erred in admitting at trial statements which he made to a minister during spiritual counseling when the minister's wife was also present. For the reasons that follow, we affirm.

According to testimony adduced at trial, the defendant's daughter first informed her mother in January 1987 that the defendant had been having sexual intercourse with her and had threatened to put her in a youth detention center if she failed to comply with his requests. When the defendant's wife confronted him with this information, he moved out of the family home. He returned two weeks later and tearfully confessed to the entire family that he was "a Christian now" and that he had lied and had done "everything she said."

Thereafter, the defendant began to attend church with his family. The defendant's wife and daughter sought counseling with the pastor of their church, Mr. Kenneth Kashner, and they revealed their situation to him. Mr. Kashner, who was not a certified pastoral counselor, then confronted the defendant and threatened to expose him to the police if he did not confess and seek counseling. Several days later, the defendant met with the minister and, while also in the presence of the minister's wife, made several inculpatory statements. The defendant subsequently attended several more counseling sessions with Mr. Kashner.

In March 1987, a social worker interviewed the defendant's daughter while investigating independent allegations of physical and verbal abuse. When the defendant's daughter revealed that the defendant had sexually abused her, the matter was referred to the police.

The defendant was indicted in May 1987 on two counts of aggravated felonious sexual assault. Prior to trial, he moved to suppress his statements to Mr. Kashner as privileged communications made to a licensed minister, under New Hampshire Rule of Evidence 505. The trial court denied the motion, finding that the defendant had effectively waived the privilege by making the statements in the presence of the minister's wife. The defendant was tried and convicted, and he now appeals.

New Hampshire Rule of Evidence 505 provides:

"A priest, rabbi or ordained or licensed minister of any church or a duly accredited Christian Science practitioner shall not be required to disclose a confession or confidence made to him or her in his or her professional character as spiritual advisor unless the person confessing or confiding waives the privilege."

Generally, the presence of an "extraneous" third party during a privileged conversation operates to destroy the privilege. *See State v. LaRoche*, 122 N.H. 231, 233, 442 A.2d 602, 603 (1982). According to Rules 502 and 503, however, privileged communications to a physician or an attorney include communications to those assisting or working under the supervision of the physician or attorney. N.H. R. Ev. 502, 503(a). The defendant urges us to construe Rule 505 similarly to include those laypersons assisting or working under the supervision of the licensed minister. We decline to adopt such a construction.

It is well settled that statutory privileges should be strictly construed. *E.g., State v. LaRoche supra; In re Brenda H.*, 119 N.H. 382, 385, 402 A.2d 169, 171 (1979). If this court in approving the rules had intended the coverage of the religious privilege to be as broad as that of the physician-patient and the attorney-client privileges, it could easily have provided for the presence of third party "assistants" within the express language of Rule 505. *Cf.* N.H. R. Ev. 502, 503(a). We note as well that Rule 503(b), which recognizes a privilege for confidential communications between a psychologist or a certified pastoral counselor and his or her client, also expressly includes those working under the supervision of the psychologist or the certified pastoral counselor. N.H. R. Ev. 503(b). *See generally* RSA 330-A:16-c (State certification requirements for pastoral counselor include graduate degree, completion of supervised clinical pastoral education, and status as recognized minister, priest, rabbi or religious leader). The absence of such a provision in the express language of the religious privilege of Rule 505 thus becomes even more conspicuous, and we will not interpret the rule in a manner inconsistent with its plain language.

*Affirmed.*

All concurred.