Lowy, J.
The defendant, Callum Miller (“the defendant”), is charged with the murder of Edward White. The defendant now moves to suppress statements made by him to police officers on September 29, 2002, and all evidence obtained as a result of his statements. On June 3, 2002, this Court held an evidentiary hearing on the defendant’s motion to suppress evidence. Based on the evidence presented and the reasonable inferences to be drawn therefrom, this Court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
Edward White was found dead in his home at 44 Cross Street in Beverly, Massachusetts on the evening of September 28, 2001. Paul Sanberg, who had recently decided to purchase the home from Mr. White, discovered the body when he arrived at 44 Cross Street to sign a purchase and sale agreement. Upon discovering the body, Sanberg called the police.
The police learned that the defendant lived in the house at 44 Cross Street with Mr. White. Sergeant Robert Irwin of the Massachusetts State Police, and another officer contacted the defendant’s family and learned from the defendant’s father that on September 25, 2001, the defendant had told his father that the defendant had killed Mr. White the day before. Members of the defendant’s family also informed the police that the defendant was driving Mr. White’s van and that he was in New York City. The police also obtained information from the company that issued Mr. White’s credit card that the defendant had used Mr. White’s credit card at the Hudson Hotel on September 26, 2001, and at the Mercer Hotel on September 28,2001.
On September 29, 2001, at approximately 2:35 a.m., the police obtained an arrest warrant for the defendant issued out of the Salem District Court in Salem, Massachusetts. Massachusetts law enforcement officers then contacted the New York City police and informed them of the warrant and requested their assistance in the investigation. Members of the New York City police then went to the Mercer Hotel where they learned that an Edward White with an address of 44 Cross Street, *12 Beverly, Massachusetts was registered at the hotel and that Mr. White’s van was in the hotel garage. On September 29, 2001, at 4:52 a.m., the defendant was taken into custody by the New York City police based on the arrest warrant issued out of the Salem District Court.
Upon learning of the defendant’s arrest, Sergeant Irwin and Trooper Silva and two Beverly Police Officers, Detective Bianchi and Detective Geary, traveled to New York City by car. They arrived at approximately 9:10 a.m. on September 29, 2001 and met with Detective Whitehead of the New York City Police Department. Detective Whitehead informed the officers from Massachusetts that the defendant was secured, but that nobody had spoken to him or Mirandized him.
Detective Bianchi and Sergeant Irwin then met with the defendant in a small interview room. The defendant was given his Miranda rights and his right to a prompt arraignment. He indicated orally that he understood those rights and that he wished to waive them. The defendant also signed a Miranda waiver form and a right to prompt arraignment form. The officers observed that the defendant did not appear to be under the influence of alcohol.
The officers told the defendant that they were their investigating the murder of Edward White and that they had obtained an arrest warrant for him. The defendant then stated he wanted to talk about “Ted’s” death and admitted to killing Mr. White.
The defendant was asked if he was under the influence of any drugs or alcohol and he responded that he was not. He was also asked whether he had ever been arrested before, and if so, whether he had been given Miranda warnings. The defendant responded affirmatively to both questions. The officers did not raise their voices during the interrogation. The defendant appeared sad at times, but oriented, and he appeared to have an appreciation for the seriousness of the situation. At some point after the defendant admitted killing Mr. White, but prior to the defendant’s statement being read back to him and prior to the defendant initialing his statement, he asked permission to make a telephone call. The police officers allowed the defendant to make a telephone call. The defendant called his brother and spoke to him for one to two minutes. Upon completion of the interview, the defendant thanked the officers for treating him like a gentlemen.
The van was searched by New York City police officers for bodies and evidence of criminal activity in New York before being released to Massachusetts authorities. The van was transported to Massachusetts where a search warrant issued for the van. Items were seized from the van as a result of the search in Massachusetts, including a bloody hammer and other blood soaked items.
RULINGS OF LAW
Applicability of New York Statutory Law
The defendant argues that statements he made to Massachusetts police officers while he was in custody in New York should be suppressed because the statements violated his statutory rights under New York law.[1] Under New York law, the right to counsel attaches upon the filing of an accusatory instrument and cannot be waived except in the presence of counsel. Accusatory instruments include, inter alia, felony complaints, indictments, misdemeanor complaints, and superior court information.
Here, the accusatory instrument was a complaint filed in Salem District Court in Massachusetts. The defendant was arrested in New York by New York police officers pursuant to a warrant issued on the basis of the complaint filed in the Salem District Court. The defendant contends that while in New York, he was entitled to the same benefits and protections as other persons in the state, including the applicability of New York law regarding waiver of counsel. Since he was questioned in New York, although only by Massachusetts police officers, after the filing of an accusatory instrument, albeit one filed in Massachusetts, the defendant argues he could not 'waive his right to counsel except in the presence of counsel.
The Commonwealth argues that New York law does not apply because the defendant was arrested in Massachusetts pursuant to a warrant issued in Massachusetts, and was questioned only by Massachusetts police regarding a crime committed in Massachusetts. The only interest New York had in the defendant was his status as a fugitive from justice and a complaint for being a fugitive from justice does not trigger criminal proceedings.[2] In addition, the Commonwealth contends that under New York law an accusatory instrument, as defined by NYCPL §§100.05, 100.10, must be filed with “a local criminal court” and Salem District Court is obviously not a local criminal court in New York. Id.
This is an issue of first impression in Massachusetts. Other courts, however, have held that “there is no constitutional barrier . . . [other than the United States Constitution], which precludes one jurisdiction from refusing to honor the standards of another relative to the validity of an arrest or search [or interrogation].” People v. Saiken, 275 N.E.2d 381, 385 (Ill.S.Ct. 1971). While one state may provide more protection than the United States Constitution and more than another state, obviously no state may provide less constitutional protection than the United States Constitution. See Saiken, 275 N.E.2d at 385; LeFave, Search and Seizure §1.5(c) at 146-47 n.3 (3rd ed. 1996). In addition, “[i]nmost circumstances , the full faith and credit clause is not a significant barrier to a forum court’s decision to use forum law.” John Bernard Corr, Criminal Procedure and the Conflict of Laws, 73 Geo.L.J. 1217, 1224 (1985). The defendant has not asserted a violation of his rights under the United States Constitution and there are no other constitutional or statutory laws which require this Court to apply New York law. Even under New York law, however, the defendant’s right to counsel never attached. The applicable statute and the case law interpreting the statute *13 require the filing of an accusatory instrument in a New York court before the defendant’s right to counsel attaches. See CPL 100.05; People v. Williams, 732 N.Y.S.2d 829, 835 (Supreme Ct. 2001) (holding that “physical police custody pending arraignment, prior to the preparation of a complaint, alone [does not cause] the right to counsel to attach so as to require suppression of statements obtained in the absence of counsel”); citing People v. Wilson, 451 N.Y.S.2d 719, 720 (Ct.App. 1982).
In addition, the statute which defines criminal courts states: “[t]he criminal courts of this state are comprised of the superior courts and the local criminal courts.” CPL 10.10; 10.30. The language of the statute and the “familiar law that statutes do not extend . . . beyond the boundaries of the State in which they are enacted” indicate that the New York legislature did not intend the “local criminal court” provision of the statute to be read as any local criminal court anywhere in the United States. CPL 10.10; Howarth v. Lombard, 175 Mass. 570, 572 (1900).
Assuming, however, that under New York law criminal proceedings were initiated against the defendant, even under a conflicts of law analysis, this Court determines that Massachusetts law should apply.
In the absence of an applicable U.S. constitutional provision, courts generally follow the rule that “the law of the forum governs as to procedure and rules of evidence.” People v. Burge, 443 S.W.2d 720 (Tex.Crim.App. 1969); Saiken, 275 N.E.2d at 385; LaFave, Search and Seizure §1.5 (c) at 146. The decision to apply the forum state’s[3] law is based on the forum state’s superior “interest in proceeding effectively to prosecute major crimes committed within its boundaries . ..” People v. Rogers, 141 Cal.Rptr. 412, 417 (1977). See Saiken, 275 N.E.2d at 385; People v. Benson, 454 N.Y.S.2d 155, 157 (App.Div. 1982); 0, 472 N.Y.S.2d 815, 822 (Sup.Ct. 1984). For example, in Saiken, the court noted that Indiana, the state where the evidence was obtained, “had no vital contact with the crime; and the application of Illinois evidentiary law [where the crime occurred] would not offend the comity of interstate relationships between [the states].” Id. at 385.
Moreover, even if “the conflict concerning the choice of law encompasse[s] the preliminary issue of whether the evidence was wrongfully obtained, a substantive matter,... from the viewpoint of‘significant relationship’ or ‘center of gravity’ rules, the significant contacts” are with the state in which the crime occurred and is being prosecuted. Saiken, 275 N.E.2d at 385. See Douglas 472 N.Y.S.2d at 822; LaFave, Search and Seizure §1.5 (c) at 146. Here, Massachusetts law should apply because Massachusetts is clearly the forum state and has the more significant relationship to the case. The alleged crime was committed in Massachusetts, the alleged victim and the defendant were both residents of Massachusetts, the defendant was interrogated by Massachusetts police, the defendant’s statement refers to acts which took place in Massachusetts, and the crime is being prosecuted in Massachusetts.
The underlying policy reasons for applying the laws of the forum state are discussed in People v. Orlosky, 115 Cal.Rptr. 598, 600-601 (1974), where the court held that the application of California’s exclusionary rule to evidence obtained in violation of another state’s laws would not further the underlying purposes of deterrence and preservation of judicial integrity. See id.; Kelly v. Civil Service Com'n, 427 Mass. 75, 78 (1998); Rogers, 141 Cal.Rptr. at 416; Commonwealth v. Bennett, 369 A.2d 493 (Pa.Super. 1976). Massachusetts courts have also recognized "the broad policy considerations behind the exclusionary rule” and have refused to apply the rule if it would not serve its intended purpose. See Commonwealth v. Cryer; 426 Mass. 562, 569 (1998).
For example, in Cryer, supra, the defendant contended “that his confession, which was given to Massachusetts police while he was being held in New Hampshire on an unrelated matter, should be excluded from evidence as having been made involuntarily, because his attorney in the unrelated matter had instructed the New Hampshire police that the defendant was not to be questioned without the attorney’s permission.” Id. at 563. The court stated:
[flashioning a rule under art. 12 . . . would serve no useful purpose as far as the police of another jurisdiction are concerned. They are unlikely to be instructed or deterred by the suppression of evidence in accordance ■with rules by which they are not accustomed to playing. By the same token, on any view of the law, there can be no deterrent effect on the Massachusetts officers here because their conduct was not improper.
Id. at 569.
Here, application of the exclusionary rule would serve no purpose. See Mapp v. Ohio, 367 U.S. 643, 648 (1960); Kelly v. Civil Service Com’n, 427 Mass. 75, 78 (1998). The Massachusetts police did not violate Massachusetts law and, therefore, excluding the evidence in this case would not deter future similar conduct by Massachusetts police officers. See Commonwealth v. Barros, 435 Mass. 171, 182 (2001) (stating that the purpose of the exclusionary rule is to deter future police misconduct); Cryer, 426 Mass. at 569. Furthermore, it is unreasonable to expect Massachusetts police officers to be instructed in New York law, particularly given the facts of this case. See Cryer, 426 Mass. at 569. The Massachusetts officers left Massachusetts at approximately 4:30 a.m., arrived in New York at approximately 9:00 a.m., and had little if any discussion with the New York Police regarding the case before they questioned the defendant. New York police officers were not present when Massachusetts officers questioned the defendant and there was little, if any time, for the Massachusetts officers to familiarize themselves with New York statutoiy law. No purpose would be served under Massachusetts law or in further *14 anee of New York law by applying the exclusionary rule in this case.
The cases the defendant cites in support his arguments are distinguishable from the facts in this case because they pertain to the legality of an arrest without a warrant by an out-of-state police officer. Commonwealth v. Federici, 427 Mass. 740 (1998); Commonwealth v. Gullick, 386 Mass. 278 (1982). Federici and Gullick, supra, involve the application of a narrow, specific standard regarding extraterritorial warrantless arrests. See Federici, 427 Mass. at 742, citing United States v. Di RE, 332 U.S. 581, 589 (1947) (holding “that in the absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity”); Gullick, 386 Mass. at 281. Although the law regarding extraterritorial warrantless arrests is well-settled, this case does not involve an extraterritorial warrantless arrest and the law regarding the admissibility of evidence and the application of the exclusionary rule present a novel situation in Massachusetts. In this case, the question is “an evidentiary [one], procedural in nature,” and therefore, governed by the law of the forum, Massachusetts. See Saiken, 275 N.E.2d at 385.
G.L.c. 276, §33A
The defendant argues that if the Court determines that Massachusetts law applies, the defendant’s statements should be suppressed because “the police violated [his] statutory right to make a telephone call” pursuant to G.L.c. 276, §33A. Section 33A requires “the police official in charge of the station . . . having a telephone wherein a person is held in custody, [to] permit the use of the telephone . ..” G.L.c. 276, §33A. Although the statute does not require the exclusion of statements obtained in violation of the statute, in Commonwealth v. Alicea, 428 Mass. 711, 715-16 (1999), the court held that “(t]he statute itself does not prescribe any penalty for a violation of this mandate [and therefore, to] make the statute ‘an effective piece of legislation’ ... we have grafted an exclusionary rule to it.”
Here, the statute does not apply because the statute clearly states that the “police official in charge of the station" permit the defendant to make a telephone call, and in this case, New York police were in charge of the station where the defendant was held. See Horneman v. Brown, 286 Mass. 65, 71 (1934) (stating that “[statutes must be construed in conformity to the meaning expressed by their words . . .”). Moreover, applying the statute in this case would require this Court to hold that a Massachusetts statute can regulate the conduct of New York police officers. The reach of a Massachusetts statute, however, must end at Massachusetts’ borders unless the legislature has provided for extra-territorial authority in the statute. See Howard v. Lombardo, 175 Mass. 572, 573 (1900); Bradley v. Burton, 151 Mass. 419, 421 (1890) (stating that “[i]t is a general rule, that a State or nation cannot give its statutes extra-territorial effect”); Commonwealth v. LeBlanc 407 Mass. 70, 75 (1990) (holding that the legislature has, when it intended a statute to extend to other territories, clearly stated its intent in the statute). The police, therefore, were not required to inform the defendant that he had a right to use the telephone.[4]
Even if “it was error, [however], for the police officers not to inform the [defendant... of his right to] make a telephone call, the error does not warrant suppression of the confession on the record in this case.” Commonwealth v. Parker, 402 Mass. 333, 341 (1988). There is no evidence on the record that the police intentionally deprived the defendant of his right to make a telephone call. See id. (stating: ‘‘[o]n review of the record, there is no evidence that the police intentionally prevented the defendants from communicating with family members or counsel . . .”); Commonwealth v. Meehan, 377 Mass. 552, 535 (1979) (holding that “[w]e have not yet ordered suppression in a case where, although deprivation occurred, it was not through proved intention . . .”); Commonwealth v. Santiago, 30 Mass.App.Ct. 207, 220 (1991) (upholding the denial of a motion to suppress where “[n]o evidence was presented that [the defendants] had requested and been denied earlier use of the phone”). Suppression is only warranted in cases where there is an intentional violation of the statute. See Commonwealth v. Johnson, 422 Mass. 420, 429 (1996) (“[s]uppressing evidence obtained as a result of an intentional violation ... is intended to make the legislation effective . . . We have not extended the policy to unintentional deprivations by the police”).
Here, the defendant was given his Miranda warnings informing him of his right to counsel, voluntarily signed a waiver of prompt arraignment,[5] and when he ultimately did request that he be permitted to make a telephone call, he was allowed to do so. Nothing in the record suggests that the Massachusetts officers’ failure to inform the defendant of his statutory right to make a telephone call was intentional and, therefore, application of the exclusionary rule in this case is not warranted.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion to suppress evidence be DENIED.

The defendant argued in his Motion to Suppress, but not at the hearing, that he did not knowingly, willingly and voluntarily waive his right to remain silent and that the statements were not voluntary within the meaning of the “humane practice” doctrine. This court finds that: (1) the defendant was given his Miranda warnings; (2) he voluntarily and knowingly waived his Miranda rights; and (3) he made the statements without being intimidated or coerced. See Commonwealth v. Williams, 388 Mass. 846, 850-56 (1983). I credit the officer’s testimony that the defendant did not exhibit any signs of intoxication, that he indicated he had been Mtrandlzed before, and that the officers did not raise their voices during the interrogation. In addition, the detailed statement that the defendant provided, reviewed, and signed indicates a level of coherence not characteristic of an intoxicated, disoriented, or confused individual.

At the time of the interrogation, no fugitive from justice complaint had issued in New York.

The forum state is always the state in which the crime was committed because courts take jurisdiction only of criminal matters that occur within their boundaries.” John Bernard Corr, Criminal Procedure and the Conflict of Laws, 73 Geo.L.J. 1217, 1224 n.31 (1985), citing R. LeFlar, American Conflicts Law §111 at 223-25 (3d ed. 1977).

Nonetheless, once they arrived at the police station in New York, out of an abundance of caution and in the interest of fairness, the Massachusetts officers should have offered the defendant the opportunity to make a telephone call.

Although the defendant did not raise the issue at oral argument, this Court notes that the defendant voluntarily signed a waiver of prompt arraignment. See Commonwealth v. Rosario, 422 Mass. 48, 54 (1996).