Billings, Thomas P., J.
For the reasons that follow, the Commonwealth’s Motion in Limine to Admit New Hampshire Toll Records is ALLOWED.
FACTS
The defendant (“Fitzpatrick”), a resident of Freedom, New Hampshire, is charged with having committed a double murder in Wakefield, Massachusetts on the morning of March 13, 2006. There were no eyewitnesses. The circumstantial evidence against Fitzpatrick includes the fact that at 8:41 the morning of the murder an E-ZPass transponder belonging to Fred Martin, a neighbor of Fitzpatrick, was recorded traveling northbound through the Dover, New Hampshire tolls on the Spaulding Turnpike. Martin was in Florida at the time and had not authorized anyone to use his pickup truck, which he had left (with .the E-ZPass inside) in Freedom.
Martin’s house, where he kept a key to the truck, was broken into shortly before the murders. He later was able to identify the truck on surveillance videos, taken in Wakefield on the morning of the murders, showing the truck traveling toward the murder scene and then away from it ten minutes later, at times consistent with its having been at the scene at the time of the murders. The 8:41 a.m. passage of the transponder through the Dover tolls is consistent with the truck then having proceeded from Wakefield northbound on the way back to Freedom.
Martin first discovered that his truck had been through the Dover tolls on the morning of the mur *127 der — when Martin himself was in Florida — when a charge for the toll showed up on his bill. He has since provided the Commonwealth with a written waiver of any rights of confidentiality he may have in the toll records.
Waiver in hand, the Commonwealth obtained by subpoena the records from the New Hampshire Department of Transportation, and also from the third-party vendor in New Jersey who administers the E-ZPass program. The Commonwealth has also obtained the vendor’s raw electronic data, which (it reports) show that on the morning of the murders Martin’s transponder passed through the Rochester, Dover and Hampton tolls southbound, and then Hampton, Dover and Rochester northbound, but that Martin was charged only for Dover northbound.[1]
Subsequent DNA testing has discovered DNA belonging to the defendant on one of the keys to the truck, and on the steering wheel. Martin has told police that to his knowledge, the defendant has never been inside the truck.
DISCUSSION
The Commonwealth seeks to have the E-ZPass records relating to Martin’s transponder on the day of the murders admitted at trial. The defendant’s challenge to this evidence is premised on a New Hampshire statute, N.H.R.S.A. 237:16-e, which reads (in pertinent part) as follows:
[A]ll information received by the department [of Transportation] that could serve to identify vehicles, vehicle owners, vehicle occupants, or account holders in any electronic toll collection system in use in this state shall be for the exclusive use of the department for the sole purpose of administering the electronic toll collection system, and shall not be open to any other organization or person, nor be used in any court in any action or proceeding, unless the action or proceeding relates to the imposition of or indemnification for liability pursuant to this subdivision. The department may make such information available to another organization or person in the course of its administrative duties, only on the condition that the organization or person receiving such information is subject to the limitations set forth in this section. For the purposes of this section, administration or administrative duties shall not include marketing, soliciting existing account holders to participate in additional services, taking polls, or engaging in other similar activities for any purpose.
The defendant notes that Massachusetts, too — in Mass. G.L.c. 81A, §10 and c. 91 App. §1-23 — has provided for the confidentiality of records of the electronic toll collection systems of the Turnpike and Port Authorities.[2]
For present purposes, I will assume that the New Hampshire statute creates an evidentiary privilege which the Massachusetts courts should be willing — to a point, at least; see infra — to recognize. The question then becomes how the statute applies to the facts of this case.
On its face, R.S.A. 237:16-e applies only to “information received by the department [of Transportation].” The Commonwealth argues that the statute therefore does not cover its subpoena to the New Jersey vendor, which processed and stored the data.
Those data, however, were first “received” in New Hampshire, in the form of a transponder signal at a tollbooth. The record before me does not indicate whether the equipment receiving the signal was owned and/or operated by the Department, or by the vendor; nor, I think, does it matter. Whatever data the vendor receives and processes, it receives and processes on the Department’s behalf. It seems clear that the Legislature, in enacting the statute, intended to provide assurance that E-ZPass data would be held confidential, not merely to redirect subpoenas. In short: I assume that where R.S.A. 237:16-e applies, it prohibits the use of E-ZPass data, whether obtained from the Department or from the vendor.
In this case, however, the use of Martin’s vehicle and transponder was without his knowledge or authorization. He has since waived all claim of privilege or confidentiality in the E-Z records from the day of the murders. Statutory privileges are generally waivable by the holder of the privilege, even where the statute does not expressly provide for waiver. See, e.g., Désclos v. Southern N.H. Med. Ctr., 153 N.H. 607, 903 A.2d 952 (2006).
Martin’s waiver should be given effect. R.S.A. 237:16-e is clearly intended to protect the privacy interests of E-ZPass holders, and perhaps others using the pass with the holder’s permission. The Legislature likely intended thereby to encourage drivers to sign up for the E-ZPass program. It seems highly unlikely that the statutory privilege was meant to survive the passholder’s express waiver, or to benefit a thief of the passholder’s vehicle. Such a construction would run counter to the familiar precepts that “[statutory privileges must be construed strictly,” State v. LaRoche, 122 N.H. 231, 233, 442 A.2d 602 (1982), accord, Three Juveniles v. Commonwealth, 390 Mass. 357, 359 (1983), and that statutes are to be construed so as to effectuate the probable intent of the legislature, taking “all parts of the statute together to effectuate its overall purpose and to avoid an absurd or unjust result.” Formula Development Corp. v. Town of Chester, 156 N.H. 177, 179, 934 A.2d 504 (2007); accord, Commonwealth v. Rahim, 441 Mass. 273, 278 (2004).
Finally, I note that even if the New Hampshire legislature did intend, by N.H.R.S.A. 237:16-e, to protect the privacy of car thieves using the toll roads of the Granite State, and even if it intended also that a waiver by the vehicle’s rightful owner be given no *128 effect, then Massachusetts’s own law and legislative policy are to the contrary. Both G.L.c. 81 A, §10 and c. 91 App. §1-23 expressly limit their protections to information “relative to account holders who participate in [the Turnpike Authority’s or the Port Authority’s] electronic toll collection system.” (Emphasis supplied.)
Massachusetts, in other words, would admit its own electronic toll data in the circumstances presented here. As a colleague has written:
In the absence of an applicable U.S. constitutional provision, courts generally follow the rule that “the law of the forum governs as to procedure and rules ' of evidence.” People v. Burge, 443 S.W.2d 720 (Tex.Crim.App. 1969); [People v. Saiken, 275 N.E.2d 381, 385 (Ill. 1971)]; LaFave, Search and Seizure §1.5(c) at 146. The decision to apply the forum state’s law is based on the forum state’s superior “interest in proceeding effectively to prosecute major crimes committed within its boundaries ...” People v. Rogers, 141 Cal.Rptr. 412, 417 (1977). See Saiken, 275 N.E.2d at 385; People v. Benson, 454 N.Y.S.2d 155, 157 (App.Div. 1982); People v. Douglas, 472 N.Y.S.2d 815, 822 (Sup. Ct.1984).
Moreover, even if “the conflict concerning the choice of law encompasse[s] the preliminary issue of whether the evidence was wrongfully obtained, a substantive matter, . . . from the viewpoint of ‘significant relationship’ or ‘center of gravity’ rules, the significant contacts” are with the state in which the crime occurred and is being prosecuted. Saiken, 275 N.E.2d at 385. See Douglas, 472 N.Y.S.2d at 822; LaFave, Search and Seizure § 1.5(c) at 146.
Commonwealth v. Miller, 2002 WL 1489613 [15 Mass. L. Rptr. 11] (Mass.Super. 2002; Lowy, J.). Accord, Commonwealth v. Gonzalez, 2004 WL 503959 (Mass.Super. 2004; Agnes, J.); Restatement of Conflict of Laws, §139(2).
Here, even assuming the New Hampshire statute was intended to apply to the facts of this case, the Commonwealth’s interest in prosecuting a double murder committed within its borders is paramount to whatever interest, if any, New Hampshire has in protecting E-ZPass data relating to the travels of a stolen vehicle, especially where the owner and passholder has waived all rights to confidentiality in those data.
ORDER
For the foregoing reasons, the Commonwealth’s Motion in Limine to Admit New Hampshire Toll Records is ALLOWED. The toll records may, assuming compliance with such requirements as foundation and a valid hearsay exception, be admitted at trial.

 These points describe a route south on the Spaulding Turnpike (New Hampshire Route 16), then the Blue Star Turnpike (Interstate 95), then north again on the same route. This would be, it appears, the most direct route by major roads from Freedom (which is on Lake Ossipee) to Wakefield, and back again.
The Commonwealth explains that the toll system records a transponder passing through a toll plaza even if the driver elects to pay in cash. If the driver tenders cash, the attendant accepting it manually overrides the system so that the driver is not billed; the raw data, however, remain in the system. The Commonwealth theorizes that the driver of the Martin truck may have paid the tolls in cash in the belief that this would prevent his travels being made a matter of record, but that a toll attendant in Dover may have been slow hitting the override button on the northbound trip.

 he pertinent portions of the two Massachusetts statutes are identical with each other but for minor differences in punctuation, and provide: “The authority shall maintain the confidentiality of all information including, but not limited to, photographs or other recorded images and credit and account data, relative to account holders who participate in its electronic toll collection system. Such information shall not be a public record and shall be used for enforcement purposes only with respect to toll collection regulations.”
There is no reported case construing the New Hampshire statute or either of the Massachusetts statutes. By way of example only, it seems clear under all three statutes that if a participant in the E-ZPass program were charged with speeding, the government could not use E-ZPass data to show the times that s/he cleared particular tollbooths.