**BETTY J.B. and Roy B., Petitioners Below, Appellants,**

v.

**DIVISION OF SOCIAL SERVICES, and Children's Bureau of Delaware, Inc., Respondents Below, Appellees.**

Supreme Court of Delaware.

Submitted: April 4, 1983.

Decided: May 3, 1983.

529

Frederick S. Kessler (argued), Agostini & Frabizzio, Wilmington, for appellants.

L. Susan Faw (argued), Richards, Layton & Finger, Wilmington, and Carol Scharfe Widing, Deputy Atty. Gen., Wilmington, for appellees.

Before HERRMANN, C.J., HORSEY and CHRISTIE, JJ.

CHRISTIE, Justice:

This case involves an appeal from a termination of parental rights ordered by the Family Court after a full hearing. We find no error in the rulings made by Family Court and affirm that decision.

The parents of the child in whom rights have been terminated are fine people but they have been the victims of substantial, long-standing and unresolved emotional problems. To their credit they have done much for many children. Over a period of 16 years, 28 children have been placed in their home for foster care by the Delaware Division of Social Services. These parents were also permitted to adopt five of the foster children. However, as the years went by, the family problems became more serious and eventually four of the five

adopted children have developed significant emotional problems. Finally, the foster-care status of the home was terminated, and the parents voluntarily relinquished custody of the disturbed, adopted children to the Division of Social Services. Two of these children, however, are now adults and have returned to stay with the parents.

Sheila, the child who is the subject of this proceeding, is one of the four adopted children who experienced emotional difficulties in her adopted home. She was removed from the home in 1979 when she was nine years of age, after having lived with the parents since her infancy. She is now 12. The parents decided to place Sheila in the custody of the Division of Social Services in order to secure for her a type of psychiatric treatment the parents could not afford. This voluntary placement was made on the advice of a child psychiatrist whom the family had been consulting.

The Division contracted with the Children's Bureau, a non-profit social service agency, to arrange for the care of the child.[1] The Children's Bureau, in turn, arranged foster home placement for Sheila and out-patient care at the Terry Children's Psychiatric Center. However, a short time after placement, Sheila attempted to commit suicide because of her separation from her parents. She was then transferred to in-patient care at the Terry Center.

The parents were never permitted to visit with Sheila after they surrendered custody.

Two conferences regarding visitation were held with them at the Terry Center, but the custodial and treating authorities were of the opinion that the parents' insight and emotional attitudes were so poor that visitation would be harmful to the child. After a year at the Terry Center, which was marked by encouraging improvement, Sheila was placed in the foster home in which she now resides. Sheila has continued to make excellent progress in this home, and the foster parents wish to adopt her. She now expresses feelings of rejection and hostility toward the legal parents and is reluctant to have any contact with them.

The parents initiated action in Family Court to force the Children's Bureau to grant them visitation rights. The Children's Bureau, in turn, petitioned to terminate the adopted parents' parental rights under 13 *Del.C.* § 1103(5)(a).[2] The Family Court consolidated the visitation and termination actions.

Before trial, the Family Court permitted discovery by the Children's Bureau of the mother's past medical and psychological records over the objections of the parents who argued that such records are privileged. See the Family Court decision on that point in *Shipman v. State,* Del.Fam.Ct., 442 A.2d 101 (1981). After trial, the judge granted termination of parental rights. He did not reach the visitation issue. He denied a post-trial motion that Family Court assess legal fees and costs against the inter-

1. The Children's Bureau intervened in this action, and, for our purposes, it is a real party in interest. The Division has adopted Children's Bureau's position on all issues in this litigation.

2. 13 *Del.C.* § 1103. *Grounds for termination of parental rights.*

The procedure for termination of parental rights for the purpose of adoption or, if a suitable adoption plan cannot be effected, for the purpose of providing for the care of the child by some other plan which may or may not contemplate the continued possibility of eventual adoption, may be initiated whenever it appears that:

  \*  \*  \*  \*  \*  \*

(5) The parent or parents of any child, or any person holding parental rights over such child,

are not able, or have failed, to plan adequately for the child's physical needs or his mental and emotional health and development and:

a. In the case of a child in the care of an authorized agency:

1. The child has been in the care of an authorized agency for 1 year, or there is a history of previous placement or placements of this child, or a history of neglect, abuse or lack of care of other children by this parent; and

2. The conditions which led to the child's placement still persist, and there appears to be little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future.

venor and the State. See the decision on that point in *Shipman v. State,* Del.Fam.Ct., 454 A.2d 767 (1982).

Thus, there are three issues before this Court: the ruling of the Family Court as to pretrial discovery of the psychological history of the mother; the basic ruling terminating parental rights; and the matter of assessment of fees and costs.

### Pretrial Discovery

The parents contend that under Rule 503(b) [3] of the Delaware Uniform Rules of Evidence there is a privilege as to psychological records unless the party herself places her emotional condition in issue. The Family Court correctly determined that Rule 503(d)(3) [4] creates an exception to the Rule 503(b) privilege if the person for whom such privilege exists asserts a particular physical, mental, or emotional condition as an element of a claim or defense.

■ Under the circumstances here present, the parents' emotional conditions were raised by their petition for visitation. The records were relevant to an evaluation of whether contact with them would be harmful to the child. Additionally, such records were also relevant to an evaluation under 13 *Del.C.* § 1103(5)(a)(2) [5] as to whether the mother's past inability to make adequate plans will continue and whether that past malady reflects her future capacity to care and plan for the child's emotional health. Thus, the records of the mother's psychiatric or psychological history was dis-

coverable within the discretion of the Court. *See* Rules 401, 402, and 403 of the Delaware Uniform Rules of Evidence regarding relevant information.

■ Further, if it were to be found that the mother had not placed her mental health in contention when she sought visitation, any privilege which she retained must be found to be a qualified one when such privilege is asserted in a termination proceeding. When otherwise inaccessible and privileged information becomes pertinent to an issue vital to the future well-being of the child, the parent's right to privacy and confidentiality must yield. *See In re Brenda H.,* N.H.Supr., 119 N.H. 382, 402 A.2d 169 (1979); 16 *Del.C.* § 908; 11 *Del.C.* § 1113. Whenever one seeks to resist the termination of her parental rights over a child, the emotional health of such person is put in issue within the meaning of Rule 503.

### Termination of Parental Rights

■ We also affirm the decision on the merits of the termination petition. The Court's findings are supported by clear and convincing evidence as well as by inferences which are the product of an orderly and logical deductive process. *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* Del.Supr., 402 A.2d 1202, 1204 (1979); *Levitt v. Bouvier,* Del. Supr., 287 A.2d 671, 673 (1972). *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

We note, however, that there was some confusion at oral argument as to whether it

---

**3.** Rule 503. *Physician and Psychotherapist-Patient Privilege.*

　　*　　*　　*　　*　　*　　*

(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

**4.** Rule 503. *Physician and Psychotherapist-Patient Privilege.*

　　*　　*　　*　　*　　*　　*

(d) Exceptions.

　　*　　*　　*　　*　　*　　*

(3) *Condition an Element of Claim or Defense.* There is no privilege under this rule as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

**5.** See n. 2, supra.

**532**

was necessary for the Family Court to find that the parents continued to be unable to "plan adequately for the child's physical needs or his mental and emotional health and development ..." during the time that the child was away from the parental home in a voluntary placement.

We think such a finding should have been made. The State and society in general have a fundamental interest in preserving and protecting the family unit. *See Petitioner F. v. Respondent R.,* Del.Supr., 430 A.2d 1075, 1079 (1981); *see also* 16 *Del.C.* § 901. In a situation where existing family relationships may be disrupted under 13 *Del.C.* § 1103(5), the Court must be satisfied that the parent's inability to "plan adequately" for the child is a continuing inability which has not abated on account of the passage of time or a change of circumstances.

■ Although this point was not directly addressed in the written decision of the Family Court, it is clear that there were contacts between the custodial authorities and the parents after the placement of the child, and that the parents demonstrated continuing inability to plan adequately for their child's emotional well-being. The judge recognized this continuing failure when he found that the conditions which had made placement necessary had not been remedied. Any failure to make an express finding on this point was harmless.

### Legal Fees and Costs

■ Finally, we hold that there was no abuse of discretion in the denial of the parents' petition for fees and costs. Family Court Rule 430(d)[6] recognizes the Court's authority to assess such fees, but it speaks in discretionary terms. The Family Court judge denied the motion, asserting a logical and reasonable basis for his decision. *Wife*

6. Family Court Rule 430
```
        *    *    *    *    *    *
```
(d) Counsel Fees. In any case where there is a legal or equitable basis therefor, the Court may assess against a party the reasonable counsel fees of any other party. Where counsel fees are requested, the attorney shall submit

*(J.F.V.) v. Husband (O.W.V., Jr.),* 402 A.2d at 1204; *see also* 10 *Del.C.* § 5106 (allowance of costs in the Court of Chancery) and Superior Court Civil Rule 54(d). There was no abuse of discretion.

The decisions are AFFIRMED.

to the Court, in writing, a statement of the time and effort expended with regard to the proceeding in this Court only, and the Judge presiding at such proceeding shall establish the amount of the fee and may assess the same against the party deemed responsible therefor.