### In the Matter of M.C., Alleged Dependent Child.

### No. 14989.

Supreme Court of South Dakota.

Considered on Briefs Feb. 12, 1986.

Decided July 24, 1986.

Janice Godtland, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for plaintiff and appellee State of S.D.

Pat Schroeder, Public Defenders Office, Sioux Falls, for M.C., Alleged Dependent Child.

Roger W. Hunt, of Hunt & Haugaard Law Office, Sioux Falls, for defendant and appellant Mother.

MORGAN, Justice.

M.J.C. (mother) appeals from the trial court's adjudication that her two-year-old daughter M.C. was a dependent and neglected child and the subsequent dispositional decree under which mother's parental rights were terminated. We affirm.

Department of Social Services (Department) first became involved with mother and M.C. when they received reports regarding strange behavior by mother. After approximately six months of reports and incidents regarding mother's behavior, the child was removed from her home on November 29, 1984, per order of the circuit court. On January 11, 1985, mother was first advised of her right to counsel and of certain other constitutional and legal rights in the upcoming proceedings regarding her child. A first adjudicatory hearing was held on February 7, 1985, followed by another adjudicatory hearing on February 28, 1985. An order of adjudication declaring M.C. to be a dependent child within the meaning of SDCL 26–8–6 was filed on April 22, 1985. A first dispositional hearing was commenced on March 29, 1985, resulting in a decree of disposition being filed by the circuit court on April 26, 1985. A final dispositional hearing was held on May 10, 1985, and the court subsequently filed a supplemental decree of disposition on June 3, 1985, ordering the parental rights of mother terminated and placing M.C. in the custody of Department for purposes of adoption.

In its findings of fact relating to the adjudicatory hearing, the trial court found mother suffers from paranoid schizophrenia as evidenced by (1) comments to various people regarding snakes being in people's minds and bodies, including M.C.'s brain, ears and bottom; (2) comments to various people including police personnel, United States Marshall's Service personnel and various mental health professionals that the government is broadcasting her name and/or picture on television and radio; and (3) neighbors' testimony of between seventy-five and one hundred incidents lasting anywhere from five minutes

to one hour of animal-like grunting, ear-piercing screaming, thumping, stomping, and crying in mother's apartment. The trial court also found that testimony presented by the State from both professional and lay witnesses showed extreme concern for M.C.'s emotional health because of mother's above-noted behavior. The trial court then concluded that M.C. was a dependent child within the meaning of SDCL 26–8–6, in that the State had proven its case by clear and convincing evidence.

In its supplemental findings of fact and conclusions of law relating to the second dispositional hearing, the trial court found that the testimony throughout pendency of the action indicated that mother has severe psychiatric problems and needed medication, that she refused to take such medication, that there was little positive movement in seeking help for her mental problems during pendency of the action. The court had experienced mother's behavior firsthand and considered it extremely detrimental to the emotional health of M.C., a three-year-old girl. Considering these circumstances, the court then concluded that there was no less restrictive alternative than terminating mother's parental rights.

■ As her first issue, mother claims the trial court improperly admitted testimony of Dr. Bill Arbes, mother's psychotherapist. During the adjudicatory hearing, Dr. Arbes testified concerning his evaluation of mother and gave his opinion that she was suffering from schizophrenic paranoia. At the hearing, mother objected to introduction of this testimony on the basis of SDCL 19–13–7, the physician-patient privilege. In ruling upon mother's objection, the trial court determined that SDCL 26–10–15 creates an exception to the physician-patient privilege in dependency and neglect cases. That statute states:

The confidential relation privilege set forth in §§ 19–2–3, 19–2–5.1, and 19–13–6 to 19–13–15, inclusive, may not be claimed in any judicial proceeding involving child abuse or child neglect or resulting from the giving of any report con-

cerning a child's injury or neglect or the cause thereof, pursuant to §§ 26–10–10 to 26–10–12, inclusive.

Mother argues that any abrogation of the physician-patient privilege should be read narrowly. Essentially, mother argues that the exception to the physician-patient privilege codified in SDCL 26–10–15 should be read by this court to apply only to communications between the allegedly dependent child and the physician or psychologist. We believe this reading is too narrow considering the purposes of dependency and neglect hearings. The best interests of the child are of paramount consideration in these hearings. SDCL 26–8–36. *See also* SDCL 26–8–2 (statute to be construed liberally for purposes of protection of child). The statute specifically states that the privilege shall not apply in any judicial proceeding involving child neglect. The language of SDCL 26–10–15 is clear on its face.[*]

Other jurisdictions have also looked at the purpose of protecting the interests of the child in determining that the physician-patient privilege does not apply in child welfare proceedings. *See Betty J. B. v. Division of Social Services*, 460 A.2d 528 (Del.1983); *In re Jackson*, 81 Ill.App.3d 136, 36 Ill.Dec. 507, 400 N.E.2d 1087 (1980); *Allen v. Department for Human Resources*, 540 S.W.2d 597 (Ky.1976); *In re Brenda H.*, 119 N.H. 382, 402 A.2d 169 (1979); *In re Dodge*, 29 Wash.App. 486, 628 P.2d 1343 (1981). *Contra In re S.W.*, 79 Cal.App.3d 719, 145 Cal.Rptr. 143 (1978).

> [A]ny privilege which [mother] retained must be found to be a qualified one when such privilege is asserted in a termination proceeding. When otherwise inaccessible and privileged information becomes pertinent to an issue vital to the future well-being of the child, the parent's right to privacy and confidentiality must yield.

*Betty J.B.*, 460 A.2d at 531. *See also Dodge*, 628 P.2d at 1347.

Additionally, mother can be said to have put her emotional health in issue, and thus the privilege would fall away under SDCL 19–13–11, which is set forth below.

> There is no privilege under § 19–13–7 as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

The Delaware Supreme Court determined that "[w]henever one seeks to resist termination of her parental rights over a child, the emotional health of such person is put in issue within the meaning of [SDCL 19–13–1]." *Betty J.B.*, 460 A.2d at 531. *See also Allen*, 540 S.W.2d at 598. We adopt the holding of the Delaware court. Thus, it appears that because of the nature of the proceeding mother's privilege is subject to the exceptions of either SDCL 19–13–11 or SDCL 26–10–15.

■ As her second argument, mother claims she was denied due process of law due to State's failure to provide her with a speedy and timely hearing in these termination proceedings. M.C. was removed from mother's custody on November 29, 1984. The first hearing in the matter was conducted forty-three days later. The adjudicatory hearing did not commence for another twenty-seven days. Mother argues that State has offered no explanation in justification of this delay in proceedings. *See* SDCL 26–8–23.2 (hearings for children removed from homes shall be given priority in scheduling).

A similar claim has already been addressed by this court in *People in Interest of M.W.*, 374 N.W.2d 889 (S.D.1985). As in

---

[*] It should be noted at this point that we are not unmindful of SDCL 36–27A–38 even though the parties made no mention of this statute in their briefs. We deem the confidential communications set forth in SDCL 19–13–7 and SDCL 36–27A–38 to be identical as they apply to licensed psychologists. As such, the exception contained in SDCL 26–10–15 is applicable to the privilege claimed under either statute.

*M.W.*, in this case mother makes no substantiated claim of harm which resulted from the alleged dilatory scheduling. In *M.W.*, we determined that since parents had not shown prejudicial harm from delay in the proceedings, the claim had no merit. In this case, although the time length in concluding these proceedings is troubling, mother makes no substantiated claim of prejudice resulting from this delay. In fact, since the major portion of the proceedings rested upon mother's mental problems, the delay could have in fact worked in her favor since she was given more time to seek help prior to the termination.

■ Finally, mother argues that termination of her parental rights was not the least restrictive alternative available to the trial court. As noted in the trial court's dispositional findings, the record is replete with instances of mother's extreme psychiatric problems. Additionally, when offered a chance to obtain psychiatric help, mother either refused or was dilatory in obtaining such help. Mother also expressed her intention to discontinue therapy after her child was returned. When all attempts and assistance to better the home fail for lack of cooperation no less restrictive alternative remains and termination of parental rights is justified. *See People in Interest of J.S.N.*, 371 N.W.2d 361 (S.D.1985).

The decree of disposition is affirmed.

FOSHEIM, C.J., HENDERSON and WUEST, JJ., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.