# In re M.M., Juvenile

[569 A.2d 463]

No. 87-573

Present: Allen, C.J., Peck and Dooley, JJ., and Connarn, D.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned

Opinion Filed November 3, 1989

*Jeffrey L. Amestoy*, Attorney General, Montpelier, *Michael O. Duane*, Assistant Attorney General, and *Barbara L. Crippen*, Special Assistant Attorney General, Waterbury, for Plaintiff-Appellant.

*Martin and Paolini*, Barre, for Defendant-Appellee.

*Walter M. Morris, Jr.*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for M.M.

**Allen, C.J.** On June 18, 1985, M.M., born approximately one month earlier, was taken into custody by the State due to the mental illness and resulting inappropriate behavior of her mother. Two days later, the State filed a petition alleging that M.M. was in need of care and supervision pursuant to 33 V.S.A. § 632(a)(12)(B). At a disposition hearing held on August 6, 1985, custody over M.M. was transferred to the Commissioner of So-

cial and Rehabilitation Services (S.R.S.). On April 6, 1987, a dispositional review report was filed with the trial court, its goal being to return M.M. to her home under the care of her mother within six months. At a review hearing held almost two months later, S.R.S. altered this plan and sought to terminate the mother's residual parental rights, under 33 V.S.A. § 659(a), without limitation as to adoption [1] After several hearings, the trial court denied the motion to terminate residual parental rights. S.R.S. appeals, arguing that the trial court committed reversible error by excluding the testimony of two psychiatrists involved in the mother's care. We reverse.

At the basis of the S.R.S. petition to terminate residual parental rights is the belief that M.M.'s mother will be unable to resume parenting duties in the foreseeable future because of manic depressive illness. At the termination hearings, S.R.S. attempted to introduce the testimony of two psychiatrists involved in the treatment of the mother's illness. The first, Dr. Theodore Robbins, has periodically served as the mother's psychiatrist since late 1970 and was responsible for her non-emergency hospitalization on June 11, 1987. At the July 2, 1987 hearing, Dr. Robbins testified that he had reviewed the mother's complete medical record and had been able to form opinions as to both her mental health condition and ability to parent. The second, Dr. John Stark, a clinical director at the Vermont State Hospital, had treated the mother during her stay at the hospital in 1986.

The trial court refused to allow the testimony of both doctors, ruling that the testimony fell within the physician-patient privileges created by 12 V.S.A. § 1612 and V.R.E. 503. The only evidence allowed regarding the mother's present psychiatric condition, treatment history and ability to resume parenting was a court-ordered evaluation of the mother by Dr. Neil Senior and testimony by both him and the mother at the September 28, 1987 termination hearing. The court-ordered evaluation was based on three phone calls, a review of the mother's community

---

[1] At the time of the termination proceedings, M.M.'s father was willing to consent to termination of his parental rights in the event the mother's rights were terminated. M.M.'s father has since died.

mental health records and a one-hour interview with the mother. In the evaluation, Dr. Senior recommended termination of residual parental rights.

The court did not follow Dr. Senior's recommendation based in part on its finding that he "could not fully assess [the mother's] ability to resume parenting through lack of data." Instead, the court denied the petition to terminate residual rights, 33 V.S.A. § 659(a),[2] after considering the factors set forth at 33 V.S.A. § 667.[3] According to the court, M.M.'s bonding with her foster parents, adjustment to life in her foster home and visitation history with her mother did not justify severance of residual rights. The court also determined that there existed a real possibility of reuniting M.M. with her mother within a reasonable time and that it was unfair to terminate residual rights in light of the inadequacies of the S.R.S. case plan "in failing to affirmatively provide proper mental health programs to [the mother]."

On appeal, S.R.S. challenges the trial court's refusal to allow the testimony of Dr. Stark and Dr. Robbins, arguing that (1) the testimony was admissible under 33 V.S.A. § 659; (2) the testimony was admissible under V.R.E. 503(d)(3); (3) a balancing of public policy interests against the need to preserve the privilege requires the allowance of the testimony; and (4) M.M.'s

---

[2] Under § 659(a), "[a]n order of the court may also be amended . . . by that court at any time upon petition therefor by a party or on its own motion on the ground that changed circumstances so require in the best interests of the child."

[3] "A juvenile court considering a petition for modification under 33 V.S.A. § 659(a), wherein SRS is seeking custody without limitations as to adoption, must consider the legislative criteria for determining the child's best interest as set forth in 33 V.S.A. § 667." *In re J.J.*, 143 Vt. 1, 3, 458 A.2d 1129, 1130 (1983). These include:

    (1) The interaction and interrelationship of the child with his natural parents, his foster parents if any, his siblings, and any other person who may significantly affect the child's best interests;

    (2) The child's adjustment to his home, school, and community;

    (3) The likelihood that the natural parent will be able to resume his parental duties within a reasonable period of time; and

    (4) Whether the natural parent has played and continues to play a constructive role, including personal contact and demonstrated love and affection, in the child's welfare.

33 V.S.A. § 667.

mother waived her physician-patient privilege under V.R.C.P. 35(b)(2). Because we find the testimony admissible under V.R.E. 503(d)(3) and 12 V.S.A. § 1612, we do not reach S.R.S.'s other arguments.

Under V.R.E. 503(b):

> A patient has a privilege to refuse to disclose and to prevent any other person . . . from disclosing confidential communications made for the purpose of diagnosis or treatment of his . . . mental . . . or emotional condition . . . among himself, his physician . . . or mental health professional, and persons who are participating in diagnosis or treatment under the direction of a physician . . . or mental health professional, including members of the patient's family.

S.R.S. does not argue that the disputed testimony would fall outside the physician-patient privilege, but contends that such testimony is admissible under an exception to the general rule of the privilege. Under V.R.E. 503(d)(3), "[t]here is no privilege under this rule as to a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense . . . ."

An individual who seeks to resist action by the State to terminate his or her parental rights over a child places his or her mental health in issue, justifying the admission of testimony by treating physicians or the admission of psychiatric records, under V.R.E. 503(d)(3), which might otherwise be barred by the physician-patient privilege. *Betty J.B. v. Division of Social Services*, 460 A.2d 528, 531 (Del. 1983) (mother's medical and psychological records were discoverable in termination of parental rights proceeding); *In re M.C.*, 391 N.W.2d 674, 676 (S.D. 1986) (testimony of mother's psychotherapist admissible in termination of parental rights proceeding).[4] This

---

[4] The fact that Vermont has no provision expressly waiving the physician-patient privilege in civil proceedings in which a child's neglect or abuse is at issue such as Del. Code Ann. tit. 16, § 908 (1983), relied on by the Delaware Supreme Court in *Betty J.B.*, 460 A.2d at 531, or S.D. Codified Laws Ann. §

rule finds justification in the importance of juvenile proceedings that may lead to termination of parental rights and the fact that any harm resulting from disclosure of privileged information is substantially reduced by the confidential nature of those proceedings. See 33 V.S.A. § 651(c) and (d); *In re J.S.*, 140 Vt. 458, 463, 438 A.2d 1125, 1126 (1981) ("Our juvenile shield law requires that juvenile court proceedings be confidential.").

A critical issue in a proceeding to terminate parental rights is whether the parent will be able to resume parental duties within a reasonable time. 33 V.S.A. § 667(3). The trial court ought not be deprived of material testimony bearing on this question.

■ Since the mother here opposed termination of her residual parental rights, her mental health was placed in issue and the testimony of Dr. Robbins and Dr. Stark should, therefore, have been admitted under Rule 503. The fact that the mother did not initiate the termination proceedings or any other action consolidated with the termination proceedings is not determinative. *Betty J.B.*, 460 A.2d 531.[5]

M.M.'s mother argues that any error by the trial court in refusing the testimony in dispute was rendered harmless by the admission of the evaluation and testimony of the court-appointed psychiatrist, Dr. Senior. According to the mother, testimony by the two S.R.S. experts would have been cumulative. We disagree.

A review of Dr. Senior's testimony and written evaluation reveals no evidence of the mother's past treatment with medication or her response to medication therapy. Dr. Senior even

---

26-10-15 (Supp. 1989), relied on by the South Dakota Supreme Court in *In re M.C.*, 391 N.W.2d at 676, does not require a different result. The decisions in both *Betty J.B.* and *In re M.C.* were clearly based, in part, on the Rule 503(d)(3) exception. As the court in *Betty J.B.* noted, "[w]hen otherwise inaccessible and privileged information becomes pertinent to an issue vital to the future well-being of the child, the parent's right to privacy and confidentiality must yield." 460 A.2d at 531.

[5] M.M.'s mother also waived any privilege she may have had under 12 V.S.A. § 1612 by opposing the termination proceedings. An act by a party to a civil proceeding, placing his or her health at issue, has the effect of waiving the physician-patient privilege protected by § 1612. See *Mattison v. Poulen*, 134 Vt. 158, 161, 353 A.2d 327, 330 (1976) (bringing of civil action and placing at issue injuries received waives privilege safeguarded by § 1612).

admitted at the September 28, 1987 hearing that he was unfamiliar with the mother's response to medication therapy:

> And I don't know this, because I haven't worked with her over the last couple of years, but she may well have a disease that breaks through the medication, even if she takes it.

Moreover, the trial court found that Dr. Senior could not fully assess the mother's ability to parent because of lack of data. In light of these deficiencies in Dr. Senior's testimony, it is clear that testimony by Dr. Robbins and Dr. Stark would not have been cumulative. The trial court's error in refusing to admit the testimony of these two psychiatrists was not harmless.

M.M.'s mother further argues that this Court should "affirm the order of the lower court dismissing the petition to terminate her residual parental rights." This argument overlooks the fact that the trial court did not dismiss the petition. It observed that the petition was unclear as to the grounds upon which relief was requested and did not satisfy the requirement of "concise language" as mandated by the statute. The sufficiency of the petition was not challenged by M.M.'s mother in the trial court, and the court determined whether S.R.S. had proven the case for modification. The denial of the motion to terminate was based upon an extensive and thorough examination of the best interests of the child and not because of any procedural defect. Since the mother has not filed a notice of appeal challenging the sufficiency of the petition, her argument is not properly before us. V.R.A.P. 4; *Dowlings, Inc. v. Mayo*, 137 Vt. 548, 550, 409 A.2d 588, 590 (1979).

*Reversed and remanded for proceedings consistent with this opinion.*