### In re C.I., Juvenile

[580 A.2d 985]

No. 88-409

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ.**

Opinion Filed August 10, 1990

*Howard E. Van Benthuysen,* Franklin County State's Attorney, and *Jo-Ann Gross,* Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Steve Dunham,* Public Defender, St. Albans, for Defendant-Appellant.

**Gibson, J.** This is an appeal by C.I., a juvenile, from an order of the Franklin District Court declaring him to be a child in need of supervision (CHINS) pursuant to 33 V.S.A. § 632(a)(12)(C). We affirm.

The CHINS petition was filed on January 13, 1988, and a preliminary hearing was held on January 21, 1988, at which time father, mother and C.I. all entered denials to the petition; the court ordered that temporary placement of the child remain with the mother. A merits hearing was convened on February 5, 1988, but was continued at the request of the mother prior to the taking of any evidence. Further hearings were held on March 9, March 16, April 5 and April 13, 1988. On April 15, 1988, the court found that C.I. was CHINS because he was beyond the control of his mother. In its disposition order, the court awarded legal custody of C.I. to his mother, with protective supervision by the Department of Social and Rehabilitation Services (SRS). C.I. thereafter filed the present appeal.

C.I. argues first that the trial court lost jurisdiction when it failed to commence a "hearing on the merits" within fifteen days of the filing of the petition. 33 V.S.A. § 647(a) states in pertinent part:

> At the time of the filing of the petition, . . . the court shall fix a time for a hearing thereon, which, if the child is in detention or shelter care, shall not be later than fifteen days after the filing thereof . . . .

■ The time schedules presented in the statute are directory, not jurisdictional; thus, a failure to comply with the time requirements does not automatically divest the trial court of jurisdiction or result in the voiding of the CHINS adjudication or the disposition order. *In re M.C.P.*, 153 Vt. 275, 294, 571 A.2d 627, 637 (1989); *In re J.R.*, 153 Vt. 85, 92, 570 A.2d 154, 157 (1989). In any event, the facts do not support C.I.'s theory that the hearing was untimely. When the CHINS petition was filed on January 13, 1988, C.I. was living at home, and he continued to live at home until January 28, 1988, when he was placed in a foster home. It was then that C.I. first came under "detention or shelter care," within the meaning of § 647(a). The merits hearing was convened February 5, 1988, well within the time prescribed by the statute. On February 20, 1988, C.I. was returned to his mother's home, where he remained until shortly before the April 13 hearing.

■ Appellant argues that there was no "significant" hearing until March 9, 1988, and that the period in consideration under § 647(a) should be the period between January 28, 1988 and March 9, 1988. We disagree. Although no evidence on the merits was presented until April 5, 1988, the merits hearing was duly convened on February 5, 1988, at which time certain preliminary matters, including the mother's request for a continuance, were discussed with the court. Since fewer than fifteen days had elapsed from January 28, 1988, the statute was therefore met. See *In re R. S.*, 143 Vt. 565, 569–70, 469 A.2d 751, 754 (1983) (statutory period was complied with where merits hearing, convened within fifteen days of filing petition, was continued to allow parties additional time to prepare).

■ The statute's application does not depend on whether a particular hearing is "significant," and this case is an illustration of why it should be interpreted according to its plain meaning. The hearings on March 9 and March 16 dealt exclusively with preliminary matters, including the issue raised by C.I. of whether Dr. Clifford Rivers, a clinical psychologist, should be allowed to testify about the February 29, 1988 session he had with C.I. and his mother. Central to the appeal is the hearing

held on April 5, 1988, when evidence was first presented on the merits of the petition. A key witness on that date was Dr. Rivers, who testified as to the unmanageability of C.I., based on his counseling sessions with the juvenile and his mother, both individually and together. Dr. Rivers had begun counseling in January, 1985, and continued in that role on a regular basis until March 5, 1987. After the CHINS petition was filed, Dr. Rivers met again with C.I. and his mother on February 29, 1988, at the request of the deputy state's attorney, in order to become familiar with the then-existing situation, and he testified about this session as well as the prior sessions. C.I. had every right to question the propriety of that testimony, but may not be heard to argue that his doing so rendered the hearings on March 9 and 16 "significant" for purposes of § 647(a), whereas the hearing on February 5, which dealt with other preliminary issues, including a motion for continuance, was "insignificant."

■ C.I. next contends that the court erred in receiving the testimony from Dr. Rivers relating to the February 29, 1988 session, because it was arranged by the deputy state's attorney without notifying C.I.'s attorney, in violation of D.R. 7-104(A)(1). The disciplinary rule is clear that a lawyer representing a client "shall not . . . [c]ommunicate or cause another to communicate on the subject of the representation with a *party* he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so." (Emphasis supplied.) The State argues that a juvenile is not an adverse party to the State in a CHINS proceeding within the meaning of D.R. 7-104(A)(1). We do not agree. The fact that the State is acting as parens patriae when it initiates a CHINS proceeding does not mean that those opposing the petition are not adverse parties. It is not the State's underlying motive nor the fundamental purpose behind the legislation under which the State acts that determines the adverseness of parties in litigation. It suffices for parties to be adverse that "'[t]he issue must be proffered by one and controverted by the other. *They must be arrayed on opposite sides of the issue . . . .*'" *Williams v. Evans*, 220 Kan. 394,

398, 552 P.2d 876, 880 (1976) (quoting *Pearlman v. Truppo*, 10 N.J. Misc. 477, 478–79, 159 A. 623, 624 (1932)) (emphasis in original).

■ Even assuming a violation of the disciplinary rule, however, it does not follow that the testimony should have been excluded automatically.[1] There was never any question that Dr. Rivers had been counseling both the child and the mother at the direction of SRS and that SRS involvement was clear at all times from the time counseling began in 1985 through the next two years. Nor can there be any question but that Dr. Rivers would have been allowed to testify about what he knew about the child or the mother as a result of those counseling sessions. *In re M.M.*, 153 Vt. 102, 105–06, 569 A.2d 463, 465–66 (1989); see *Betty J.B. v. Division of Social Services*, 460 A.2d 528, 531 (Del. 1983); *In re M.C.*, 391 N.W.2d 674, 676 (S.D. 1986). But it is clear in the present case that the error with respect to the February 29, 1988 counseling session was inadvertent and harmless. The doctor had been extensively involved in the family's dynamics, and his interview with C.I. and his mother basically served to update the evaluation he had previously made in the ordinary course of his counseling, at the behest of SRS. Three other witnesses were presented at the merits hearing by the State, all of whom testified to the same problems discussed by Dr. Rivers in his testimony. Had Dr. Rivers simply continued in his counseling role, without prompting from the deputy state's attorney, or had he testified on the basis of the other testimony presented, D.R. 7-104(A)(1) would not have been implicated at all.

In *Trans-Cold Express, Inc. v. Arrow Motor Transit, Inc.*, 440 F.2d 1216 (7th Cir. 1971), a case heavily relied upon by appellant, the trial court refused to admit the transcript of the defendants' investigator's report, which had been obtained in violation of a pretrial order and while the investigator falsely purported to represent plaintiff's employer. In affirming the trial court's ruling, the Seventh Circuit stated:

---

[1] This case does not raise, and we do not consider, the direct enforcement of D.R. 7-104(A)(1). See A.O. 9, § 1.

> Appellants' basic argument is that the overriding importance of disclosing the truth justified their pretrial tactics. In the long run, truth will be better served by orderly straightforward procedures than by deception and attempted surprise. We find no injustice in the fact that their stratagem misfired.

*Id.* at 1220. The present case bears no relationship to the facts in *Trans-Cold Express.* There was no dissembling and no attempted surprise. On the contrary, the deputy state's attorney's contact with Dr. Rivers, though in error, arose in the context of Dr. Rivers' extensive prior association with C.I. and his family on behalf of SRS. Clearly, the deputy state's attorney should have abandoned the mode of informality once the CHINS petition was filed. But there is no suggestion of intentional misconduct on her part and, based on the entire record in this case, no evidence that the testimony resulted in prejudice to C.I.'s position.

■■ Finally C.I. argues that Dr. Rivers' testimony about him and his mother should have been barred because it violated their doctor-patient privilege as information acquired by a psychologist "in attending a patient in a professional capacity" within the meaning of 12 V.S.A. § 1612(a).[2] C.I. also relies on V.R.E. 503(a)(6).[3] C.I. may not claim a privilege on behalf of his mother; the privilege is personal to the patient and "may be

---

[2] 12 V.S.A. § 1612(a) states:

   (a) **Confidential information privileged.** Unless the patient waives the privilege or unless the privilege is waived by an express provision of law, a person authorized to practice medicine or dentistry, a registered professional or licensed practical nurse, or a mental health professional as defined in 18 V.S.A. § 7101(13) shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.

[3] V.R.E. 503(a)(6) states:

   (6) A communication is "confidential" if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination, or interview; persons reasonably necessary for the transmission of the communication; or persons who are participating in diagnosis and treatment under the direction of a physician, dentist, nurse or mental health professional, including members of the patient's family.

claimed by the patient, his guardian or conservator." V.R.E. 503(c). In any event, C.I.'s mother clearly waived the doctor-patient privilege when she opposed the CHINS petition. *In re M.M.*, 153 Vt. at 106 n.5, 569 A.2d at 466 n.5; see *Mattison v. Poulen*, 134 Vt. 158, 161, 353 A.2d 327, 329 (1976).

The same authority applies to C.I. himself, who opposed the CHINS petition, thereby placing his own mental health in issue. V.R.E. 503(d)(3) provides no privilege "as to a communication relevant to an issue of the physical, mental, or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense." The physical, mental and emotional well-being of C.I. were very much an issue in this proceeding; the impact of the home environment on the juvenile lies at the heart of any CHINS proceeding. Dr. Rivers' testimony was both relevant and important as it bore on this issue, and to decide that it should have been excluded would place an unnecessary impediment in the path of the court, which is charged with the responsibility of determining whether the juvenile is in fact in need of care or supervision.

*Affirmed.*