# In re Vincent Illuzzi, Esq.

[616 A.2d 233]

No. 91-515

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed September 4, 1992

*Wendy S. Collins*, Bar Counsel, Montpelier, for Petitioner-Appellee.

*David Putter* of *Saxer, Anderson, Wolinsky and Sunshine,* Montpelier, and *Edwin H. Amidon* of *Roesler, Whittlesey, Meekins & Amidon,* Burlington, for Respondent-Appellant.

**Per Curiam.** Respondent-attorney appeals the Professional Conduct Board's conclusion that he violated three provisions of the Code of Professional Responsibility and the Board's recommended sanction of a six-month suspension from the practice of law. We conclude that the Board failed to adhere to the requirements of its procedural rules when it adopted a second hearing panel report that had not been submitted to respondent. We therefore remand the case to allow respondent to brief and argue before the Board on the basis of the second panel report.

Respondent was charged first with violating DR 7-104(A)(1) (a lawyer shall not communicate with an adverse party known to be represented by counsel without the consent of the party's attorney) for communicating with two insurance companies after they had retained counsel to defend personal injury claims. The second charge against respondent alleged a violation of DR 1-102(A)(7) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law) for making a disparaging remark about an insurer's defense counsel. Finally, respondent was charged with a violation of DR 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) for a pattern of improper contacts that resulted in an insurer relinquishing a legal defense.

A three-member panel heard this matter pursuant to A.O. 9, Rule 8(C) and issued its report with findings and recommendations to the full Board in July 1991. Based on this report, respondent and Bar Counsel filed Rule 8(D) briefs, and the Board heard oral arguments in early August 1991. The panel then issued a new report, in November 1991, that contained substan-

tially different findings and recommendations than the initial report. For example, the first report contained the following: "Regarding the Renaudette claim, it is not clear that Mr. Illuzzi was ever told not to talk to Travelers." In the second report, without the introduction of new evidence, the language "it is not clear" became "it is clear." Although the first report found only a violation of DR 7-104(A)(1), the second report concluded that respondent had also violated DR 1-102(A)(7) and DR 1-102(A)(5). The Board adopted the second report, which emphasized that respondent communicated with the companies after being advised not to do so. Respondent contends that the Board violated A.O. 9, Rule 8(C) and thereby deprived him of the opportunity to brief and argue the revised finding and conclusions to the Board. We agree.

Rule 8(C) directs the hearing panel to issue a report containing its findings and recommendations and requires that "[a] copy of each report shall be submitted to bar counsel and the respondent." A.O. 9, Rule 8(C). Once a report is issued, Rule 8(D) directs the Board to set dates for the submission of briefs and for oral arguments. A.O. 9, Rule 8(D). The Board then may "affirm or modify the recommendations of the hearing panel, remand the matter for further proceedings before the hearing panel, or dismiss the petition." *Id.* Thus, the facts found by the panel provide the foundation for the proceedings before the Board. Any changes that the panel makes in its findings must be disclosed to the parties pursuant to Rule 8(C), which triggers the opportunity to present briefs and arguments under Rule 8(D), prior to the Board's issuance of its final report. After final submission of the matter, the Board makes its own findings of fact and conclusions of law, which respondent may then challenge before this Court.

In this case, the panel drafted a second report,\* containing findings substantially different than those contained in the initial report. The new panel report eliminated the mitigating factors contained in the earlier report and recommended sanction-

---

\* In her brief, Bar Counsel characterizes the panel's initial report as an "incomplete working draft due to numerous errors and omissions." This characterization does not aid her case because respondent is certainly entitled to the panel's final report before arguing his case to the full Board.

ing respondent. This second report of the panel was not issued until after the parties' oral argument to the Board. Thus, respondent was denied the opportunity, expressly provided for by Rule 8, to respond to the panel's changed findings and conclusions.

 Bar Counsel contends that, in this instance, strict adherence to the rules would exalt form over substance. We disagree. Attorneys appearing before the Board on charges of violations of the Code of Professional Responsibility should be accorded the full measure of procedural safeguards provided by the rules. See *In re Ruffalo*, 390 U.S. 544, 550 (1968) (lawyers subject to punishment or penalty are entitled to procedural due process). Inherent in Rule 8 is the principle that a respondent is entitled to knowledge of the material upon which the Board is acting, so that, as the Supreme Court of New Jersey has stated, respondent has the opportunity "not only to refute but . . . to supplement, explain, and give different perspective to the hearer's view of the case." *Mazza v. Cavicchia*, 15 N.J. 498, 515, 105 A.2d 545, 555 (1954) (agency denied the parties their right to a fair hearing when it relied upon a hearing officer's report that had not been disclosed); see also *Tulsa Classroom Teachers Ass'n v. State Board of Equalization*, 601 P.2d 99, 102 (Okla. 1979) ("It is essential to fair play and to minimize the risk of fundamental error that, prior to the submission of the examiner's report, it be made available to the parties."). Failure by the Board to follow the requirements of Rule 8 deprived respondent of the opportunity to address the Board concerning the issues raised by the subsequent findings of the panel, and placed evidentiary issues before this Court that should have been addressed by the Board. Therefore, this matter must be remanded to provide respondent with an opportunity to address the second panel report.

In the interest of judicial economy, we address one other issue raised by respondent that likely will confront the parties on remand. Respondent argues that DR 7-104(A)(1) should not be applied to prohibit contact between plaintiffs' lawyers and insurance company adjusters, claiming that (1) such application would be contrary to accepted practice by Vermont attorneys and would therefore violate respondent's due process rights, (2) insurance companies are not named parties in suits between automobile accident plaintiffs and defendants, and the rule,

therefore, does not apply in this case, (3) direct contact between plaintiffs' attorneys and insurance adjusters promotes judicial economy and the public interest, and (4) direct contact is necessary to prepare and prove bad faith refusal-to-settle claims against insurance companies.

■■ Due process, in the attorney discipline context as elsewhere, requires notice that an act is punishable at the time it is committed. See *Sexton v. Supreme Court Committee on Professional Conduct*, 295 Ark. 141, 143–44, 747 S.W.2d 94, 95-96 (1988) (due process violated where state suspended attorney for violation of Model Rules of Professional Conduct, which were not in effect when act committed). DR 7-104(A) of the Code of Professional Responsibility states, in part:

> During the course of his representation of a client a lawyer shall not: (1) [c]ommunicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Respondent does not argue that DR 7-104 was not in effect at the time of the conduct at issue, but rather that the Board applied the rule in a manner contrary to accepted Vermont practice. Given the absence of ambiguity in the rule, we find irrelevant respondent's contention that it is the common and accepted practice for Vermont attorneys to have direct contact with insurance companies whose defense counsel have not consented to such contact. Moreover, we note that the testimony on the practice of insurance attorneys in Vermont is in conflict. The Board did not, then, adopt a novel standard under DR 7-104, apply that standard retroactively to respondent, and thereby deprive him of his due process rights. It simply applied the rule as written.

■ Despite respondent's arguments to the contrary, we have no trouble concluding that the definition of "parties" under the rule is not restricted to named parties in a lawsuit. The language of the rule suggests no limitation on the word "party." Instead, the rule prohibits communication "on the subject of the representation" with a party that is represented by a lawyer "in that matter." The use of the words "subject" and "matter," rather than "lawsuit," indicates that DR 7-104 applies to

all transactions for which lawyers are hired and cannot be construed to imply that its application is limited to cases where suit is filed. See *United States v. Galanis*, 685 F. Supp. 901, 902 (S.D.N.Y. 1988) ("[DR 7-104(A)(1)] applies to persons retained to handle real estate transactions, administer estates for an executor, seek legislative relief, or any other of the myriad of tasks for which lawyers are employed."). Moreover, we have previously held that, for the purposes of DR 7-104(A)(1), those arrayed on opposite sides of an issue are adverse parties. *In re C.I.*, 155 Vt. 52, 56, 580 A.2d 985, 987–88 (1990). Here, the insurance companies had interests opposed to those of respondent's clients. The rule clearly prohibits direct contact without defense counsel's prior consent.

Other courts have specifically held that DR 7-104(A)(1) precludes a plaintiff's attorney from communicating directly with an insurance company without the prior consent of defense counsel. See *Waller v. Kotzen*, 567 F. Supp. 424, 426–27 (E.D. Pa. 1983) (DR 7-104 makes it clear that counsel for plaintiff should not discuss settlement directly with insurance company without obtaining consent of defense counsel that insurance company retained for insured defendant); *Estate of Vafiades v. Sheppard Bus Service*, 192 N.J. Super. 301, 314, 469 A.2d 971, 978 (Law Div. 1983) (absent evidence of consent from defense attorney, plaintiff's attorney violated DR 7-104 by conducting settlement negotiations with insurance company).

██ Because DR 7-104 interposes no meaningful obstacle to direct settlement negotiation between plaintiffs' attorneys and insurance adjusters, we need not assess the merits of respondent's argument that policy considerations favor such communication. One can fully adhere to the rule and yet receive the benefits of direct communication by contacting the insurance company's counsel and obtaining prior consent. If consent is not granted, the rule requires that all negotiation be conducted with defense counsel. Further, the rule provides no exception for contacts with insurance companies for purposes of preserving bad faith settlement claims. Therefore, such claims must and can be pursued through defense counsel in the absence of consent to communicate directly with the company.

*Remanded for proceedings not inconsistent with this opinion.*