[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING PETITIONER'S MOTION FOR DISCLOSURE OF PSYCHIATRIC TREATMENT RECORDS
The Department of Children and Families (DCF) has filed motions in this neglect proceeding seeking disclosure of the respondent mother's psychiatric treatment records. The respondent, Vicki A., objects to the requested disclosure and claims that the records. are privileged pursuant to C.G.S. 52-146
(d).
Trial is pending in this matter, and the minor child, Eric A., is under the care and custody of DCF pursuant to an order of temporary custody initially issued by this court on December 23, 1998. The petitioner has subpoenaed to court the mother's psychiatric treatment records from the Institute of Living and Hartford Hospital. Counsel for the mother stipulated at a hearing on this issue that all of the subpoenaed records relate to psychiatric treatment, and do not pertain to drug/alcohol therapy.[1] The records have remained sealed and in the possession of the court's clerk pending resolution of the petitioner's motion.
A hearing on the motion was held before this court on April 8, 1999. Vicki A., her counsel, the attorney for the minor child and petitioner's counsel were present. The court heard oral argument from the parties, but no evidence or testimony was presented by the parties nor requested by the court.
The following additional facts are necessary to the resolution of this matter. When DCF requested and received the ex CT Page 4230 parte order of temporary custody on December 23, 1998, it also filed a neglect petition concerning Eric A. That petition, filed under oath by a duly authorized agent of the DCF commissioner, alleged two statutory grounds of neglect. The first count (per C.G.S. 46b-120 (8)(B)) claimed that Eric would ". . . be denied proper care and attention physically, educationally, emotionally or morally." The second count, (per C.G.S. 46b-120 (8)(C)) claimed that the child would ". . . be permitted to live under conditions, circumstances or associations injurious to [his] well-being." DCF also filed an addendum to the neglect petition on December 23. That document, which was also sworn to under oath, alleged specific "jurisdictional facts" upon which the agency relied in initiating the neglect action. That addendum read as follows:
 "Mother has an extensive history with the department regarding her psychiatric issues and placement of her children Janelle age 22, Terris age 19 and Eric age 9.
 On 12/19/98 mother was hospitalized at Elmcrest Hospital for failure to take her medication as prescribed by her doctor. Her child was placed in a licensed DCF foster home.
 Mother is hospitalized under a fifteen day medical certificate.
 At the time of the child's removal there was [sic] no relatives available to care for the child.
 Father of said child, [Robert H.] whereabouts are unknown [sic]. Efforts to locate him by contacting the Department of Corrections, Hartford Hospital and St. Francis Hospital were unsuccessful" (Addendum to Petition dated December 23, 1998)
On December 31, 1998, Vicki A. entered pro forma denials to the neglect allegations at a hearing before the court (Keller, J.)
It is undisputed that the respondent mother has never consented to the release of these records. It is also undisputed that the records sought by DCF are privileged confidential "communications and records" relating to the respondent's psychiatric treatment, as defined by C.G.S. 52-146 (d)(2). CT Page 4231
The dispute between the parties in this matter revolves around the interpretation of C.G.S. 52-146 (f)(5). That section of the statute states:
 "Communications or records may be disclosed in a civil proceeding in which the patient introduces his mental condition as an element of his claim or defense, or, after the patient's death, when his condition is introduced by a party claiming or defending through or as a beneficiary of the patient and the court or judge finds that it is more important to the interest of justice that the communications be disclosed than that the relationship between patient and psychiatrist be protected."
The respondent claims that she has not introduced her mental condition as "an element of her claim or defense" merely by exercising her constitutional and statutory rights to contest the neglect petition. DCF adopts the opposite position, and asserts that Vicki A. did introduce her mental condition into the proceedings as an element of her defense by virtue of the denial.
State appellate courts disagree about this issue. The Maryland Court of Special Appeals held that a party merely responding to allegations in a child in need of assistance proceeding does not introduce his or her mental health into the hearing:
 "Were we to hold as appellee suggests, that the opponent of a person who has been a psychiatric patient, who has sued that person in any type of action and alleged a deficient mental condition, could force that patient either to admit the assertion by not denying it, or waive the statutory privilege by denying the contentions of the other party." In Re Matthew R. 688 A.2d 955, 966 (Md.App. 1997).
Similarly, the Supreme Court of Mississippi ruled that an exception to the psychotherapist patient privilege does not exist in parental rights termination cases based on the alleged mental illness of the parents. Lauderdale County Department of HumanServices v. T.H.G., 614 So.2d 377 (Miss. 1992).
Other jurisdictions have held that a parent's psychiatric records are admissible in a termination proceeding, even where the parent has asserted the privilege:
CT Page 4232 "An individual who seeks to resist action by the State to terminate his or her parental rights over a child places his or her mental health in issue, justifying the admission of testimony by treating physicians which might otherwise be barred by the physician patient privilege." In Re M.M., 569 A.2d 463, 465 (Vt. 1989)
Our own Appellate Court adopted the forgoing rationale in a Connecticut termination case:
 "We conclude that when the mental health of a parent in a termination of parental rights case is an issue, as it is in this case, the best interest of the child requires that the privilege between the patient and psychiatrist give way once it is shown to the trier of fact that the "communications and records" are relevant to the issues of the case." In Re Romance M., 30 Conn. App. 839, 852 (1993).
The respondent asserted at hearing that the precedent of InRe. Romance M. does not apply in the instant matter, becauseRomance was a termination case, and the instant matter is a neglect proceeding. The court does not agree, and for reasons set forth below, finds that the respondent has introduced her mental condition as an element of her defense in this proceeding.
DCF's petition, which was sworn to under oath, made specific factual allegations of predictive neglect against Vicki A. These included claims that the respondent failed to take her prescribed medications, became ill as a result, and was hospitalized at Elmcrest Hospital pursuant to a 15-day medical certificate on December 19, 1998. The petition alleges that due to the mother's illness and hospitalization, and the unavailability of other relatives to care for Eric, the child would be neglected.
In child protection cases, the court's scrutiny falls upon a party's parental abilities. A parent's illness or disability is only relevant if it is demonstrated that the condition adversely impacts his or her ability to properly care for a child. In this case, the alleged mental illness and hospitalization experienced by the respondent in December 1998 are relevant because they constitute the factual basis for claims that Vicki A. would neglect the child, or expose him to risk of harm.
The respondent denied the neglect allegations in court on December 31, 1998. A denial is ". . . a controverting of CT Page 4233 affirmative allegations in the pleadings of an adversary."Ballentine's Law Dictionary, Third Edition. p. 333. In essence, by entering her denial, the respondent seeks to contradict the allegations about her mental health in December 1998, and the specific claims that her condition would cause Eric to be neglected. The court finds that the respondent introduced her mental condition as an element of her defense in this matter by doing so.
The court is unpersuaded by the respondent's argument that this matter should be distinguished from In Re Romance M. because that case involved a termination of parental rights proceeding. Neglect trials involve serious allegations that a child's physical and/or emotional well-being are at risk. As with termination cases, parental fitness, and the safety and best interest of children are central legal issues. In the instant case, specific allegations that the mother stopped taking medication, became psychiatrically ill, required emergency hospitalization, and was unavailable to care for Eric, resulted in DCF receiving an order of the child's temporary custody and filing the neglect petition. Although this proceeding is not a termination case, its serious child protection implications lead the court to conclude that the Romance M. precedent applies here.
The court is well aware of the sound public policy which prompted our General Assembly to enact C.G.S. 52-146 (d), et sequitur. The confidentiality privilege which attends psychiatric records and communications encourages patients in need of treatment to receive it. The court finds, however, under the specific facts of this case, that a limited invasion of that privilege is necessary for the protection of the child, and for the resolution of this legal matter.
Evidence pertaining to the respondent's alleged failure to medicate, psychiatric illness and emergency hospitalization in December 1998 is clearly relevant to the factual issues which are disputed by the parties. The disclosure of certain psychiatric evidence pertaining to Vicki A's mental condition, treatment and response to therapy around the time of the neglect petition appears necessary in order for the trier of fact to properly assess whether or not the child was, or would be, neglected, and whether or not action by the state is warranted to protect the child from harm. For these reasons, the court finds that the privilege asserted by the respondent must give way to the safety issues which mandate disclosure. CT Page 4234
Given the facts presented, the Court finds that disclosure should be limited to evidence which is relevant and proximate to the specific allegations raised in the December 1998 neglect petition — e.g. evidence pertaining to the respondent's alleged failure to medicate, her psychiatric diagnosis at that time, her prognosis, her response to treatment and her need, if any, for future therapy. Any disclosure will be preceded by an in-camera inspection of the subpoenaed records by this court, and the court will attempt to minimize the intrusion upon the respondent's privilege. The court also believes that any breech of confidentiality caused by this disclosure will also be limited by the confidential nature of this Juvenile Matters proceeding.
 ORDERS
Pursuant to the protocols suggested in the cases of In Re Romance M. op. cit., and In Re Marvin M, 48 Conn. App. 563 (1998), this court will conduct an in-camera inspection of the respondent's records which have been subpoenaed to court. Psychiatric records which the court deems subject to disclosure shall be photocopied, and placed in a separate envelope in the court's file for inspection by all counsel of record. The original copies of all of the subpoenaed records — including those not deemed subject to disclosure — shall be resealed and retained in the court's file during the pendency of this proceeding. The parties shall be notified of the nature and extent of records to be disclosed by supplemental orders which the court shall issue upon completion of its in-camera inspection.
SO ORDERED.
Dated at Hartford, Connecticut this 21st day of April 1999.
Dyer, J.